## ROSENBERG, A MINOR, *v.* REYNOLDS.

*Master and servant — Scope of employment — Inferences — Chauffeur engaged in master's business, when — Negligence.*

Where the evidence discloses that at the time of plaintiff's injury by an automobile it was the property of the defendant and was being operated by his chauffeur employed to operate the same, an inference arises, in the absence of evidence to the contrary, that the chauffeur was, at the time of the injury, acting within the scope of his employment and about his employer's business.

(Decided December 16, 1918.)

ERROR: Court of Appeals for Lucas county.

*Mr. F. M. Sala* and *Mr. Frank A. Carabin,* for plaintiff in error.

*Messrs. Marshall & Fraser* and *Mr. Rathbun Fuller,* for defendant in error.

RICHARDS, J. On June 13, 1917, the plaintiff, Evelin Rosenberg, a child about four years of age, was struck by the defendant's automobile, which was going north on Linwood avenue, at about the intersection of Beacon street, in the city of Toledo, and so injured that it became necessary to amputate one of her limbs. The defendant was not in the machine, but it was being operated by his chauffeur, Peter A. Donley, and was occupied also by a nephew of the chauffeur and by a twelve-year-old grandson of the defendant. At the conclusion of all the evidence the trial judge directed a verdict for the defendant, on the ground that the chauffeur at the time of the injury was not acting within the scope of his employment. The only question submitted for our consideration is whether it appears as a matter of law that the chauffeur was not acting within the line of his employment, but had abandoned the same and was on a mission solely of his own, at the time plaintiff was injured.

The defendant was called for cross-examination and from his testimony it appears that he is the owner of the automobile in question; that he resides at 2040 Collingwood avenue, and that on the morning in question Peter A. Donley, who had been employed for several years as his chauffeur, called at the residence with the defendant's automobile to take him to the bank located at the corner of Jefferson avenue and Summit street, a trip

which he was accustomed to make on the morning
of nearly every business day.   The grandson of
Mr. Reynolds was also in the car and they arrived
at the bank shortly after 8 A. M.   Mr. Reynolds on
arriving at the bank alighted from the car, and
testifies that he directed the chauffeur to go to
defendant's garage and from there to telephone the
defendant's daughter, Mrs. Harris, and find out
what time she wanted the automobile to go and see
a circus parade which was to be given that fore-
noon.   He also testifies that his chauffeur had the
right to take the grandson to the home of his
mother or to the garage.   The residence of Mr.
Reynolds is situated something more than a mile
northwesterly from the bank, and the garage is
two or three blocks south of the residence, while
Mrs. Harris, the daughter of Mr. Reynolds and
the mother of the boy, resides on Parkwood avenue,
three or four blocks northwesterly from the Rey-
nolds home. · From the place where the accident
occurred on Linwood avenue to the residence of
Mrs. Harris is approximately three-quarters of a
mile, north of west.

The testimony of the chauffeur is to the effect
that he drove from the bank to the garage, where
he telephoned to Mrs. Harris, and, learning that
she would not want the automobile until 9:45 A. M.,
drove with the grandson to the armory in order to
help his nephew, who had joined the army, select a
suit of khaki, and that he stayed only a few min-
utes at the armory, taking his nephew in the
machine, and together they proceeded northwest-
erly to the place where the plaintiff was struck on
Linwood avenue. · The armory is situated north of

the bank where Mr. Reynolds had alighted and almost directly east of the garage.

Mrs. Harris, who was called as a witness by the defendant, says that the arrangement for her to use the automobile was made between her and her father over the telephone before he left home that morning, and that she does not remember any communication over the telephone that day with the chauffeur. The twelve-year-old grandson of the defendant, who remained with the chauffeur all the time, was not called as a witness. If the chauffeur had been intending to drive from the bank to the residence of Mrs. Harris, without going to the garage, he would have deviated very little from a direct course if he had driven by way of the armory and Linwood avenue.

The law is, of course, well settled that the defendant is liable for any negligence of his chauffeur committed within the scope of his employment and while engaged in his master's business. There can be no uncertainty as to the law; the only difficulty arises in its application, and as was stated in the case of *The Lima Railway Co.* v. *Little,* 67 Ohio St., 91, the test of the master's liability is not whether the act was done during the existence of the servant's employment, but whether it was done by the servant while acting for the master and in the prosecution of his business. If the record in this case contains evidence that the chauffeur was so engaged at the time of the injury to the plaintiff and the injury was caused by his negligence, then the case should have been submitted to the jury for its determination.

We have here the admission by the defendant that he was the owner of the automobile and that it was being driven by his chauffeur, regularly employed for that purpose, and that he had been using the machine on the morning in question while operated by his chauffeur. Whether an inference arises from these admitted facts that the chauffeur was at the time of the injury acting within the scope of his employment is a question upon which the decisions are not in accord, and it would not be possible to reconcile them. Our attention has not been called to any decision of the supreme court of Ohio directly determining this question, but in *The White Oak Coal Co.* v. *Rivoux, Admx.,* 88 Ohio St., 18, a closely allied question was involved and the question of liability was considered. In that case the man who operated the machine was a bookkeeper or cashier and he had no duties whatever to perform in regard to the automobile, the operation of which was entrusted to other persons, and it was held that a *prima facie* case was not made by establishing merely the facts that the automobile was owned by the defendant and was negligently operated by his employe, unless it further appeared that he was driving the automobile with the authority of the owner. A careful reading of the opinion of the court in that case clearly shows that this conclusion was reached because the employe had no duties to perform with reference to the automobile, and the court in the course of the opinion cite with approval various cases where it was held that a *prima facie* case would be made under the circumstances stated if the employe was the regular

chauffeur of the defendant, having duties to perform in the operation of the automobile. It appears, therefore, that while the direct question was not decided in that case, yet the only reason why the defendant was exonerated was that no inference of the employe's being within the scope of his employment arose when it appeared that he had no duties to perform regarding the automobile.

Numerous decisions could be cited, where, when it appears that the defendant was the owner of the automobile and that it was being operated by his chauffeur, regularly employed for that purpose, it has been held that it will be presumed that the chauffeur was acting within the scope of his authority and about his employer's business; and if he is not so operating the machine that fact would be one peculiarly within the knowledge of the employer. The reasons for so holding have been often stated by the courts, but we have found no instance where they have been stated with more clearness than in *Kahn* v. *Home Telephone & Telegraph Co.*, 78 Ore., 308, 312, 152 Pac. Rep., 240. In the opinion these reasons are stated as follows:

"It has been frequently held by the courts that where an automobile is operated by a person employed for that purpose, it will be presumed that he is acting within the scope of his authority and about his employer's business. If he is not so operating it, this is a fact peculiarly within the knowledge of the employer, and the burden is upon him to overthrow this presumption by evidence of which the law presumes he is in possession: Huddy, Automobiles (3 ed.) § 281; *Long* v. *Nute*, 123 Mo. App. 204 (100 S. W. 511); *Moon* v. *Matthews*,

227 Pa. 488 (76 Atl. 219, 29 L. R. A. (N.S.) 856, 136 Am. St. Rep. 902); *Ludberg* v. *Barghoorn*, 73 Wash. 476 (131 Pac. 1165); *Purdy* v. *Sherman*, 74 Wash. 309 (133 Pac. 440); *Birch* v. *Abercrombie*, 74 Wash. 486 (133 Pac. 1020, 50 L. R. A. (N.S.) 59); *Langworthy* v. *Owens*, 116 Minn. 342 (133 N. W. 867). By the terms, 'raises a presumption,' 'will be presumed,' and other similar language used in the decisions above cited, it is evident it is not meant that the circumstances of the use or possession of an automobile by an employee of the owner raises any presumption of law that the person in charge of it is using it upon the business of the master, but rather that such facts are sufficient to justify a jury in inferring that such is the case; in other words, the fact that a person is in possession of the automobile of another, and the additional fact that he is shown to have been employed by the owner to drive and care for it, taken together, form a chain of circumstantial evidence from which the jury is authorized to infer the further fact that the employee is using the machine upon the employer's business. This being the case, the owner is called upon to rebut the evidence of these circumstances by showing, by testimony satisfactory to the jury, that the real fact is otherwise; that notwithstanding the testimony introduced by plaintiff presents those circumstances which usually justify the inference that the machine is being used for his business and by his authority, the actual fact is that the employee is not so using the machine, but is taking it in connection with his own business and in performance of errands not connected with his employment."

Precisely the same holding was made in *Stewart* v. *Baruch,* 103 App. Div., 577. See also *Schreiber* v. *Matlack,* 90 Misc., 667; *Healy* v. *Bernstein,* 168 N. Y. Supp., 44; *Shamp* v. *Lambert,* 142 Mo. App., 567, 575, and *Glassman* v. *Harry,* 182 Mo. App., 304.

The inference to be drawn from proof of ownership of the car and employment of the driver is stated in Babbitt on the Law Applied to Motor Vehicles (2 ed.), Section 829.

It is said in *Cunningham* v. *Castle,* 127 App. Div., 580, in a case similar to the one at bar, that the testimony of the chauffeur that he was not using the machine in his master's business was that of an interested witness and that his credibility was for the jury. See also *Ferris, Admr.,* v. *Sterling, Exrx.,* 214 N. Y., 249.

We do not find it necessary to go to the extent announced in the two cases last cited, for the reason that in the case at bar different minds might arrive at different conclusions from circumstances disclosed in the evidence, which would of itself require a submission of the case to the jury. The fact that Mrs. Harris does not remember being called on the telephone by the chauffeur might in the judgment of the jury raise an inference that he had not in fact gone to the garage, but was proceeding direct to the residence of Mrs. Harris by way of the armory and Linwood avenue. The further fact is significant that the twelve-year-old grandson, who was in a position to know all the facts, was not called by the defendant as a witness, nor was his absence from the witness stand explained. Under such circumstances it was open to

the jury to draw an unfavorable inference by reason of his unexplained absence.

In the case at bar the admissions by the defendant on cross-examination that he was the owner of the car and that the chauffeur was in his employment raised an inference that the chauffeur was at the time of the injury acting within the scope of his employment. In determining the weight to be given this presumption the jury would naturally consider the testimony of the chauffeur, in which he says that he was on a mission purely personal to himself; the testimony of the defendant that he had directed the chauffeur to go to the garage and call Mrs. Harris on the telephone, but that the chauffeur had permission to take the grandson to his own home or to the garage; the unexplained absence of the grandson, who apparently had full knowledge of all the facts; the failure of Mrs. Harris to recall any telephone conversation that day with the chauffeur; and the doubt suggested as to any necessity of telephoning Mrs. Harris if the chauffeur was to take her that morning to see the circus parade if the arrangement had already been made between the defendant and his daughter, Mrs. Harris. The inference arising that the chauffeur was acting within the scope of his employment stands as an item of evidence, and whether it was overthrown by the other evidence in the case or whether the other evidence was of equal weight or countervailing force, was a matter to be determined by the jury. *Klunk* v. *The Hocking Valley Railway Company,* 74 Ohio St., 125.

The conclusion indicated is not in conflict with the holding in *Rawson, Admr.,* v. *Olds Motor*

*Works,* 20 C. C., N. S., 182; nor with the holding in *Stewart* v. *Whitford,* 22 C. C., N. S., 585. The latter decision was by this court, and in that case it clearly appeared that all parties agreed that the chauffeur had but one purpose in making the deviation which he did, and that was to take his friends to their destination, which was in a direction opposite from that he had been told to go, and no inference could be drawn from the facts not in dispute except one, and there was, therefore, nothing to submit to a jury. The judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed, and cause remanded.*

CHITTENDEN and KINKADE, JJ., concur.