The Kruse & Bahlman Co. et al. *v.* Brower.

*Priorities—Chattel mortgagee of merchandise and general creditors—Mortgagor agent of mortgagee, with power to sell, etc.—Mortgage not recorded immediately after execution—General creditors became such after mortgage recorded.*

In an action for personal judgment and foreclosure the holder of a chattel mortgage, which covers a stock of merchandise and after-acquired merchandise, and provides that the mortgagor is appointed agent of the mortgagee, to have charge of the stock, sell the same in the usual course of retail business, and account for and pay over the proceeds to be applied to the payment of the notes secured by the mortgage, has priority, to the extent of the notes due under the mortgage, over general creditors of the mortgagor who became such after the recording of the mortgage, even though the mortgage was not recorded until several months after its execution and delivery.

(Decided October 5, 1923.)

Error: Court of Appeals for Clermont county.

---

Chattel Mortgages, 11 C. J. § 220.

*Messrs. Nichols, Morrill, Stewart & Ginter,* for plaintiffs in error.

*Messrs. Murphy & Joseph,* for defendant in error.

BUCHWALTER, J. Jacob Spivak, on October 10, 1921, purchased a store and a stock of general merchandise from Edward Howe. Anna Brower advanced most of the money for this purchase, to-wit, ten thousand dollars, and received from Spivak a mortgage on the real estate, which included the store property, and also a chattel mortgage on the merchandise. Twenty notes, averaging about five hundred and twenty-five dollars each, were given by Spivak to Anna Brower, and were secured by the mortgages. One of these notes was subsequently paid.

The chattel mortgage, which was executed and delivered in October, 1921, was not recorded until August 7, 1922.

In November, 1922, Anna Brower brought suit against Spivak, asking for judgment on the amount due her, for foreclosure of the chattel mortgage, and for a receiver to take charge of the property. Two receivers were appointed by the court. The merchandise was sold and the money received from the sale is now held by the court for distribution in this proceeding. Several creditors intervened and set up their claims.

The question here is whether those who became creditors after the filing of the mortgage for record are entitled to share in the proceeds of the sale of said merchandise; or whether Anna Brower has a preferred claim to the extent of the notes due under her mortgage. The money realized

from the sale of the merchandise was not sufficient, after paying certain preferred claims, to fully satisfy the notes. The general creditors did not institute any proceedings to seize the chattels prior to the filing of this action in foreclosure. The chattel mortgage contained a provision that all after-acquired merchandise should be included under the terms of the mortgage, that Spivak was appointed agent of the mortgagee to have charge of the stock and sell same in the usual course of retail business, and also that Spivak was to account for and pay over the proceeds of such sales to the mortgagee in satisfaction of the promissory notes.

On hearing, the mortgage was held to be a valid lien, and was held to be preferred to the claims of the general creditors.

To this judgment, error is prosecuted here.

It is contended that the chattel mortgage not having been recorded until about ten months after it was executed and delivered was void as against general creditors, who became such after the recording of the mortgage. No question is raised as to creditors to whom Spivak was indebted prior to the filing of the mortgage. It is further contended that as there was a provision in the mortgage that the money received by the agent, Spivak, as proceeds from sales of merchandise, was to be applied in the payment of said notes, inasmuch as such proceeds exceeded the amount of the mortgage they were to be considered as paid on the account, and the debt, as against the rights of the other creditors, was thus extinguished. The provision of the General Code applicable to the chattel mortgage in this case is Section 8560:

"A mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next succeeding section."

As to the first contention, the case of *In re Shirley,* 112 Fed., 301, decided by the United States Circuit Court of Appeals of this district, in which the above section of the General Code, then Section 4150, Revised Statutes, was under consideration, holds:

"Rev. St. Ohio, Section 4150, which provides that a chattel mortgage, not accompanied by an immediate delivery followed by an actual and continued change of possession of the things mortgaged 'shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers and mortgagees in good faith,' unless the mortgage or a copy thereof be forthwith deposited for record, as construed by the supreme court of the state, does not make such a mortgage void as between the parties, but only as against those creditors who between the date of its execution and its filing have taken steps to fasten upon the property for the payment of their debts; and upon the subsequent filing of such a mortgage it becomes a valid lien from that date, in the absence of fraud, as against the general creditors of the mortgagor.

"Under such statute an unrecorded mortgage, being absolutely void as against creditors of the

mortgagor until it is recorded, until that time amounts to no more than an agreement to give a mortgage, and the mere fact that it was withheld from record does not constitute fraud as against other creditors, as to whom it would have created a valid lien if executed at the time it was filed.''

See also *Gibson & Price Co.* v. *Rouse & Hills Co.,* 25 C. C. (N. S.), 72, syllabus 1:

''Where chattel mortgages, covering all the property and all the accounts and bills receivable of the mortgagor, are taken as temporary security and are withheld from record, not as a result of any agreement nor with fraudulent intent, nor for the purpose of securing credit for the mortgagor from other parties, but to prevent creditors already existing from all pressing demands for payment at once, such mortgage is not a fraud upon present prospective creditors.''

It is further maintained that because the power to sell was given to the mortgagor, and the mortgage covered after-acquired merchandise, the mortgage was fraudulent and could not create a preference. The case of *Francisco* v. *Ryan,* 54 Ohio St., 307, disposes of this contention. The first and second propositions of the syllabus are:

''A mortgage on a stock of merchandise, though made in good faith to secure a *bona fide* debt of the mortgagor, when it allows him to retain possession with a power of sale in the course of his business, is ineffectual to create a lien as against creditors of the mortgagor who assert their rights against the property while it remains under his control; but it is valid as between the parties, and when the mortgagee takes possession, either with the consent of the mortgagor given at the

time, or under an authority conferred by the mortgage, his title becomes complete, and the property is no longer subject to legal process issued against the mortgagor, nor liable for his debts except to the extent of any surplus that may remain after the satisfaction of the mortgage debt and proper charges for enforcing the same.

"A stipulation in such a mortgage, that it shall be a lien on any goods the mortgagor may thereafter purchase and place in stock to supply the place of those he should sell, while not creating a present lien, nor a lien when and as the goods are purchased, constitutes a valid contract for a lien on such after acquired property; and possession thereof lawfully taken by the mortgagee has the same effect of protecting it in his hands from the claims of the mortgagor's creditors, as has possession taken of the property owned by the mortgagor at the time of the execution of the mortgage."

Many of the cases on this subject refer to a state of facts where the mortgagee actually seized and took possession of the chattels, but we see no merit in the contention that because the mortgagee did not actually seize these goods she is not considered as actually taking possession. Suit was filed which contained a prayer for foreclosure and a receiver to take charge of the property. Surely by this orderly method of procedure, plaintiff lost no rights of preference which could have been acquired by an actual personal taking of the chattels.

As to the second point urged, that had the money as received from the sale of goods been applied to payment of the notes it would have extinguished

the debt, it may be said that according to the terms of payment, as set forth in the notes, there was no promise to pay the notes before due, and such payments therefore would only have taken care of a portion of the notes. From the record it is clear that the balance of the notes unpaid amounted to more than the sum now held by the receiver, so that if each note were considered paid when due the notes remaining would total more than the sum now in dispute.

We find no error in the judgment of the court of common pleas prejudicial to plaintiffs in error.

*Judgment affirmed.*

CUSHING and HAMILTON, JJ., concur.