593 F.2d 1297
 100 L.R.R.M. (BNA) 2487, 193 U.S.App.D.C. 143,
85 Lab.Cas. P 11,069
 Ray MARSHALL, Secretary of Labor,
v.
LOCAL UNION NO. 639, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
INC., Frank C. DeBrouse et al., Appellants.
 No. 77-2038.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 6, 1978.
Decided Jan. 23, 1979.
 
 Appeal from the United States District Court for the District of Columbia (D.C. Civil 1963-72).
 Solaman G. Lippman and Thomas J. Hart, Washington, D. C., was on the brief, for appellants.
 Harold A. Mouzon, Jr., Atty., Dept. of Labor, Washington, D. C., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., was on the brief, for appellee, Secretary of Labor.
 Charles R. Both, Washington, D. C., for appellee, Local 639.
 Also John V. Long, Washington, D. C., entered an appearance for intervenor/appellee Daniel George & Philip A. Feaster.
 Before TAMM, ROBINSON and MacKINNON, Circuit Judges.
 Opinion for the Court filed by MacKINNON, Circuit Judge.
 Opinion filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in part.
 MacKINNON, Circuit Judge:
 
 
 1
 The District Court permanently enjoined certain former officers of Teamsters Local 639 from tampering with the property, books and records of the Local and, Inter alia, from "exercising any powers or rights . . . (or) privileges of their expired terms of office" (App. 73). This appeal by two of the enjoined officers seeks to have the injunction vacated. They allege that the case is moot and that the District Court lacked jurisdiction. We remand the case to the District Court to conduct a further hearing to determine whether the case is moot.
 
 
 2
 * On January 23, 1972, Teamsters Local 639 held an election in which the incumbent officers (including appellants Frank C. DeBrouse, President, and Robert A. Moore, Secretary-Treasurer) were reelected. Two of the unsuccessful candidates, Daniel George and Phillip A. Feaster, filed a protest with the Secretary of Labor alleging that the Union election was conducted in violation of the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. §§ 481-483 (1977).[1] In accordance with the Act, the Secretary of Labor filed suit in United States District Court asking that the election be declared void and that supervised elections be held.[2] The District Court granted summary judgment for the Secretary of Labor, and on August 21, 1973 ordered that new elections be held under the supervision of the Secretary of Labor.[3]
 
 
 3
 In the rerun election the incumbents were again reelected; George and Feaster were defeated.[4] The Secretary of Labor certified the election results and on June 24, 1974 the District Court decreed that the persons named in the certification were the duly elected officials of the Union.[5] The District Court's decree provided:
 
 
 4
 ADJUDGED, ORDERED AND DECREED that the persons named in the Certification of Election filed as aforesaid by the plaintiff (Secretary of Labor) are the duly elected President, Vice President, Secretary-Treasurer, Recording Secretary and three (3) Trustees, of defendant (Local 639) for and Until the defendant's next regularly scheduled election, but in no event longer than three years from the date of this judgment.[6]
 
 
 5
 The provision that the officers remain in office no longer than three years conformed to section 401(b) of the Act, 29 U.S.C. § 481(b), which provides:
 
 
 6
 Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing.
 
 
 7
 On June 24, 1977, when the terms of office of the incumbent officers expired according to the statute and the 1974 court order, those officers of the Local tallied the ballots for the next term of officers. The tally showed that a slate headed by George and Feaster overwhelmingly defeated the incumbent slate.
 
 
 8
 Despite the election results and the 1974 order, the officers, whose statutory term had expired, refused to vacate their offices or turn over books and records belonging to Local 639.[7] The newly elected officers promptly obtained a temporary restraining order directing the defeated officers to vacate the offices and to turn over any property, records and assets of the Local.[8] The former officers then turned over the Union offices to the new officers.
 
 
 9
 The new officers pressed for a permanent injunction, however, because they were not certain that all of the Local's books, records and assets had been delivered by the former officers.[9] After a hearing,[10] the District Court entered a permanent injunction:
 
 
 10
 ORDERED that Local Union No. 639, its former officers . . . . and all persons in active concern or participation with them, be and each of them are hereby permanently enjoined from expending funds of Local Union No. 639; tampering with, defacing or destroying any books or records of Local 639; otherwise exercising any powers or rights or privileges of their expired terms of offices; and from interfering with taking office and exercising such power and rights by the officers elected in accordance with the certified tally of ballots on June 24, 1977.[11]
 
 
 11
 After the former officers' motion to vacate the injunction was denied,[12] two former officers, DeBrouse and Moore, filed this appeal from the court's issuance of the permanent injunction.
 
 II
 
 12
 Appellants argue that this case is moot because they have already complied with the injunction. Under the mootness doctrine there must be a real controversy throughout the litigation.[13] If appellants have complied, then we agree that the case is moot.[14] Unfortunately, however, on the present record it is impossible to determine whether appellants have complied with the injunction by turning over all the property of the Local. There is no proof in the record for appellants' claim that they fully complied. Appellants have not submitted affidavits to that effect. Instead, they argued that appellees have failed to prove that appellants are retaining any of the Local's books and records. Obviously, since the new officers were not previously in office, it would be difficult for them to know what documents were missing and who had them. Appellants, on the other hand, if it were true, could easily state under oath that they returned all Union property.[15] In light of appellants' failure to do so, we are unwilling to hold that they have complied with the injunction and are not holding over as officers to the extent that they are continuing to retain some of the Local's property that it was their duty to turn over when their terms of office expired.
 
 
 13
 However, we are unable to decide the case because we cannot conclude from the record whether appellants are violating the prior order of the court and possibly the injunction by retaining control over Union property. Aside from appellees' suspicions and their belief that some property is missing, there is as yet no concrete evidence to support that charge. Neither has it been disproved.
 
 
 14
 It is therefore appropriate to remand the case to the District Court to determine whether the case is moot.
 
 III
 
 15
 Appellants also argue that the injunction should be vacated because the District Court lacked jurisdiction over the case. Appellees respond that there are two sources of jurisdiction: (1) the provision of the Labor Management Reporting and Disclosure Act that authorizes federal courts to preserve the assets of labor unions and (2) a federal court's inherent authority to enforce its judgment. If appellants are right then this court should vacate the injunction without a remand. We therefore address the jurisdiction question.[16]
 
 
 16
 * Section 402(b) of the Act, 29 U.S.C. § 482(b) provides, Inter alia, that "(t) he court shall have power to take such action as it deems proper to preserve the assets of the labor organization." Appellees George and Feaster assert that section 402(b) creates District Court jurisdiction to issue the injunction.[17] While this argument is plausible on its face, it becomes untenable when the quoted language is put in context.
 
 
 17
 Section 402 gives federal courts broad powers to remedy violations of the Labor-Management Reporting and Disclosure Act. However, section 402 establishes three prerequisites to federal jurisdiction. First, union members must exhaust internal union remedies. Then they must file a complaint with the Secretary of Labor. Section 402(a), 29 U.S.C. § 482(a). Finally, if the Secretary of Labor "finds probable cause to believe that a violation . . . has occurred . . . he shall . . . bring a civil action . . . " Section 402(b), 29 U.S.C. § 482(b). The purpose of these jurisdictional prerequisites, particularly the provision conferring standing to sue in federal court Only on the Secretary of Labor (thereby precluding member suits), is to avoid "(m)ultiple litigation and unnecessary harassment" of unions. Trbovich v. United Mine Workers of America, 404 U.S. 528, 535, 92 S.Ct. 630, 634, 30 L.Ed.2d 686 (1972); See also Wirtz v. Local 153, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968).
 
 
 18
 The authority to "preserve the assets of the labor organization" granted in section 402(b) must be read in context. United States v. Bishop,412 U.S. 346, 356, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act . . . ."). And read in context, it is clear that court jurisdiction to preserve union assets exists only if the three jurisdictional prerequisites were met.
 
 
 19
 Appellees George and Feaster have not met any of the prerequisites. First, there is no indication that internal union remedies have been tested. We recognize that internal remedies within the Local might not be functioning because of the contest between the officers. However, the remedies within the Area Councils and the International would probably still be available. Cf. Brennan v. United States, 240 F.2d 253, 257-258 (8th Cir. 1957).
 
 
 20
 Second, appellees George and Feaster failed to file a complaint with the Secretary of Labor. While the Secretary's decision to file a brief supporting their position indicates that the Secretary would have filed a complaint if he had been asked, the fact remains that the new officers did not go to the Secretary first. As a result of appellees' failure to comply with these statutory prerequisites, the provision of section 402(b) granting federal courts authority to preserve union assets is not an independent basis for finding that the District Court had jurisdiction.
 
 B
 
 21
 The power of a federal court to protect and enforce its judgments is unquestioned. United States v. New York Telephone Co., 434 U.S. 159, 172-73, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), Dugas v. American Surety Co., 300 U.S. 414, 428, 57 S.Ct. 515, 81 L.Ed. 720 (1937), Southwest Airlines Co. v. Texas International Airlines, 546 F.2d 84, 89-90 (5th Cir.), Cert. denied, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 92 (1977). The "equitable jurisdiction of a federal court extends to supplemental or ancillary bills brought for the purpose of effectuating a decree of the same court." Hamilton v. Nakai, 453 F.2d 152, 157 (9th Cir.), Cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972).[18] Thus, if appellants' conduct can be characterized as a violation of the 1974 court order, the District Court had jurisdiction to enjoin that conduct.
 
 
 22
 Appellees maintain that under this principle the District Court had equitable jurisdiction to enter the injunction. Appellees' argument is simple and straight-forward. The District Court's 1974 order declared that the winners of the rerun election were union officers "until the (Union's) next regularly scheduled election, but in no event longer than three years from the date of this judgment."[19] When the former officers refused to surrender control of the offices after losing the 1977 election, since their terms had expired, they violated the terms of the court's 1974 order.[20]
 
 
 23
 Appellants respond with two arguments. First they contend that the District Court's refusal to find that appellants were in contempt of court undercuts the claim that the 1974 order was violated. We find this argument unpersuasive. While "courts have inherent power to enforce compliance with their lawful orders through civil contempt,"[21] courts need not impose the contempt sanction for every violation.[22] Moreover, courts should be particularly wary of imposing contempt sanctions for violations of an order that is ambiguous.[23] Here, the District Court concluded that the 1974 order was not specific enough to warrant imposition of contempt sanctions.[24] This determination is not inconsistent with the court's finding that "the defeated officers are in fact extending their terms of office beyond the limitations set out in the Court's (June 24, 1974) Order. . . . "[25]
 
 
 24
 Second, appellants assert that they complied with the 1974 order before the injunction was issued.[26] Since the District Court's jurisdiction depended upon appellants' alleged failure to comply with the 1974 order, if there were no such failure, then the District Court would have lacked jurisdiction.
 
 
 25
 Appellants' argument here is similar to their mootness argument. But there is a slight difference. Jurisdiction depends upon the existence of a failure to comply with the court's order at the time the injunction was issued. Mootness, on the other hand, depends on the situation existing at the present time. If appellants are now in compliance with the injunction then the case is moot (and the injunction must be vacated) even if jurisdiction existed when the court issued the injunction.
 
 
 26
 As was indicated earlier, it is impossible to determine on this record whether appellants have complied with the injunction. Similarly, it is impossible to decide whether appellants had complied with the 1974 order before the injunction was issued. Technically, therefore, it would be appropriate to remand on the latter question in order to determine whether the court had jurisdiction.
 
 
 27
 We conclude, however, that such a remand is unnecessary. The remand on mootness will determine whether appellants have complied with the injunction. If they have, then the case is moot and the injunction should be vacated without considering the question of jurisdiction. If appellants have not complied (so that the case is not moot), then one can assume that the court had jurisdiction based on appellants' failure to comply with the 1974 order. Otherwise stated, if appellants are presently in violation of the injunction, then they must have been violating the 1974 order when the injunction was entered. In short, if the case is Not moot at the present time, then there was proper jurisdiction. Remand on the mootness question alone, therefore, is sufficient. It serves as a remand on the jurisdiction question as well.
 
 IV
 
 28
 In summary, we remand the case to the District Court to determine whether appellants have complied with the injunction (and the statute). If they have, the injunction should be vacated as moot. If they have not, the injunction should continue in force.
 
 
 29
 So ordered.
 
 
 30
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in part:
 
 
 31
 I join in Parts I and II of the court's opinion, for this case may well be moot. If, however, it is, Part III of the court's opinion is merely advisory and, as such, beyond our authority under Article III. Since we do not know whether the controversy is still alive, I cannot join in Parts III or IV, nor do I intimate any view on either the majority's legal position or its reading of the District Court's 1974 order.[1] In sum, I would simply remand the record for a determination on mootness, and withhold further action in the meantime.[2]
 
 
 
 [1]
 The protest alleged that Local 639 had violated section 401(e) of the Act, 29 U.S.C. § 481(e), by (1) failing to mail notices of the election to each member of Local 639 at his last known address at least 15 days prior to the election and (2) imposing an unlawful meeting attendance requirement on candidates for office
 
 
 [2]
 App. 21-26. Appellees George and Feaster were permitted to intervene
 
 
 [3]
 App. 31-32. This court affirmed the District Court's order on March 8, 1974. Brennan v. Local Union 639, Int'l Bhd. of Teamsters, 161 U.S.App.D.C. 173, 494 F.2d 1092 (1974)
 
 
 [4]
 The unsuccessful candidates again filed a protest with the Secretary of Labor, but this time the Secretary rejected it. Brief for Appellee, Dept. of Labor 3; Brief for Appellee, Local Union 639 (George and Feaster) 5
 
 
 [5]
 This procedure conformed to section 402(c), 29 U.S.C. § 482(c) (1977)
 
 
 [6]
 App. 34 (emphasis added). George and Feaster appealed this order, but this court affirmed. Usery v. Local 639, Int'l Bhd. of Teamsters, 177 U.S.App.D.C. 222, 543 F.2d 369 (D.C.Cir. 1976), Cert. denied, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977)
 
 
 [7]
 Appellants' counsel lamely explains their conduct as follows:
 Recognizing that their terms had expired but gravely concerned that the bitterness and hostility generated during the campaign would make an orderly transition of power impossible and severely prejudice the membership generally, the incumbent officers refused to surrender the offices and books and records of the Union until a representative of the International Union could be summoned to supervise the transition. A telegram to General President Frank Fitzsimmons requesting his immediate assistance was immediately dispatched.
 Brief for Appellant 7-8.
 
 
 [8]
 App. 38-39. The court explained its reason for entering the order as follows:
 Notwithstanding (the) election result and notwithstanding the Court's June 24, (1974) order, the defeated candidates for office who were the incumbents have refused to turn over the Local Union's offices, its property and records to the new elected officers. . . .
 It appears to the Court that in these circumstances the defeated officers are in fact extending their term of office beyond the limitation set out in the Court's Order (of June 24, 1974).
 App. 38. It might also be added that they are extending their term of office beyond the limit fixed by Statute.
 
 
 [9]
 Counsel for the new officers informed the District Court that an audit was being conducted and that "there are indications that there are substantial assets and property that have not been found." App. 53
 
 
 [10]
 App. 48-69
 
 
 [11]
 App. 73
 
 
 [12]
 App. 89
 
 
 [13]
 The mootness issue frequently arises even though there was a bona fide controversy when the case was filed. For example, in De Funis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), the plaintiff was allegedly refused admission to law school because of "reverse discrimination." As a result of his victories in the lower courts, the plaintiff had been admitted to law school and was about to graduate. The Supreme Court held that the case was moot
 
 
 [14]
 As appellees note, a case does not become moot simply because the defendant has complied with the injunction. If there is a substantial likelihood that the defendant will revert back to the enjoined practice then the case is not moot. See, e. g. Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), U. S. v. W. T. Grant, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Here, however, the injunction is aimed at appellants' possible retention of some of the property of the Local after their terms of office had expired. Once all the property of the Local is turned over, that jurisdictional base for an injunction would cease to exist and it is hard to see how the enjoined conduct is likely to be repeated
 
 
 [15]
 It would not be sufficient to state under oath merely that they do not Now possess any property of the Local. All Union property must be accounted for
 
 
 [16]
 "(A) court has jurisdiction to determine its own jurisdiction . . . ." United States v. United Mine Workers of America, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695, 91 L.Ed. 884 (1947). The dissent contends, however, that the jurisdictional inquiry must be postponed until resolution of the mootness remand and that our discussion of the jurisdiction issue constitutes an unauthorized "advisory opinion." We disagree
 It is basic to our jurisprudence that "the first and fundamental question is that of jurisdiction . . . . This question the court is bound to ask and answer for itself, even when not otherwise suggested and without respect to the relation of the parties to it." Mansfield, Coldwater & Lake Michigan Ry. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884). Accord : P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 835-36 (2d ed. 1973).
 We consider both jurisdiction and mootness to be threshold questions and in this case the two are partially interlocked. If a case can be disposed of on either ground, then a court should not postpone decision while the other ground is investigated. Accordingly, we address the jurisdiction issue to determine whether the mootness remand can be avoided. Our approach is consistent with Gilligan v. Morgan, 413 U.S. 1, 5, 93 S.Ct. 2440 (1973), where the Supreme Court passed over the mootness issue and instead decided the case on justiciability grounds. Cf. Philbrook v. Glodgett, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); Secretary of the Navy v. Avrech, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (cases were resolved on the merits without addressing difficult jurisdiction questions).
 The dissent cites North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) as holding that jurisdiction is not the "first and fundamental question" in cases involving mootness. But Rice does not support that proposition. In Rice, the Court "refus(ed) to reach the merits" (concurring op. at --- n. 1 of 193 U.S.App.D.C., at 1304, n. 1 of 593 F.2d) because "the threshold issue of mootness was improperly disposed of by the Court of Appeals." 404 U.S. 245-46, 92 S.Ct. 404. Rice is distingishable from the instant case because we have not discussed the merits in our opinion. Part III, to which the dissent objects, is merely a discussion of whether the Court has jurisdiction. Rice simply does not consider whether mootness must be addressed before jurisdiction. Moreover, the language in Rice undercuts the argument of the dissent for the passage it quotes states that "(m)ootness is a jurisdictional question . . . ." 404 U.S. at 246, 92 S.Ct. at 404, Quoted in concurring op. at ---, n. 1 of 193 U.S.App.D.C., at 1304 n. 1 of 593 F.2d. Thus, Rice gives no support to the argument that the mootness question must necessarily be addressed and resolved before other jurisdiction arguments can be considered.
 
 
 [17]
 The Department of Labor, also an appellee, does not make this argument
 
 
 [18]
 The reason for this jurisdictional rule was succinctly stated by Justice Stevens: "if parties were free to ignore a court judgment or order, the court's ability to perform its duties would be undermined." U. S. v. New York Telephone Co., 434 U.S. at 188, 98 S.Ct. at 380 (Stevens dissent)
 
 
 [19]
 App. 34
 
 
 [20]
 Both Chief Judge Bryant, who heard the motion for a temporary restraining order and Judge Hart, who issued the injunction challenged here, stated that appellants violated the 1974 order. See App. 38-39 and App. 73 respectively
 
 
 [21]
 Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1965)
 
 
 [22]
 United States v. Reide, 494 F.2d 644, 647 (2d Cir. 1974) ("a contempt citation is a matter in discretion of the judge who gives it . . . ."); Cf. In re Dellinger, 502 F.2d 813, 817 (7th Cir. 1974), Cert. denied, 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975) ("judge trying a criminal contempt case may find violations and nevertheless impose no sanctions.")
 
 
 [23]
 "(B)efore one may be punished for contempt for violating a court order, the terms of such order should be clear and specific, and leave no doubt or uncertainty in the minds of those to whom it is addressed." McFarland v. United States, 295 F. 648, 650 (7th Cir. 1933) Quoted in In re Brown, 147 U.S.App.D.C. 156, 454 F.2d 999, 1008 n. 49 (1971). See also International Longshoremen's Ass'n Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967)
 
 
 [24]
 At the hearing, Judge Hart stated:
 In order to hold anybody in contempt of a court order, it must be very specific, and be a specific violation. My order did not tell them to abandon the premises and to turn the matters over. It simply said that their office would cease.
 App. 59. The direction was implicit rather than explicit.
 
 
 [25]
 Order, July 3, 1977, App. 73
 
 
 [26]
 They assert through their attorneys, but do not prove, that after the temporary restraining order was entered they turned over the offices and all books and records in their possession
 
 
 [1]
 North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971), is squarely in point. There the Court, faced with a record that did not permit it to ascertain whether the case was moot, remanded for consideration of that question. The Court explained its refusal to reach the merits:
 Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority. Early in its history, this Court held that it had no power to issue advisory opinions, Hayburn's Case, 2 Dall. 409, 1 L.Ed. 436 (1792), as interpreted in Muskrat v. United States, 219 U.S. 346, 351-353 (31 S.Ct. 250, 251-252, 55 L.Ed. 246, 248) (1911), and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. Oil Workers Unions v. Missouri, 361 U.S. 363, 367 (80 S.Ct. 391, 394, 4 L.Ed.2d 373, 376) (1960). To be cognizable in a federal court, a suit "must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241 (57 S.Ct. 461, 464, 81 L.Ed. 617, 621) (1937). However, "(m)oot questions require no answer." Missouri, Kansas & Texas R. Co. v. Ferris, 179 U.S. 602, 606 (21 S.Ct. 231, 233, 45 L.Ed. 337, 339) (1900). Mootness is a jurisdictional question because the Court "is not empowered to decide moot questions or abstract propositions," United States v. Alaska S.S. Co., 253 U.S. 113, 116 (40 S.Ct. 448, 449, 64 L.Ed. 808, 809) (1920), quoting California v. San Pablo & Tulare R. Co., 149 U.S. 308, 314 (13 S.Ct. 876, 878, 37 L.Ed. 747, 748) (1893); our impotence "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." Liner v. Jafco Inc., 375 U.S. 301, 306 n. 3 (84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347, 351 n. 3) (1964). See also Powell v. McCormick, 395 U.S. 486, 496 n. 7 (89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491, 502 n. 7) (1969). Even in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction.
 Id. at 246, 92 S.Ct. at 404, 30 L.Ed.2d at 415-416. See EPA v. Brown, 431 U.S. 99, 103-104, 97 S.Ct. 1635, 1637, 52 L.Ed.2d 166, 170 (1977); Parker v. Ellis, 362 U.S. 574, 575-576, 80 S.Ct. 909, 910-911, 4 L.Ed.2d 963, 965-966 (1960). Cf. Gilligan v. Morgan, 413 U.S. 1, 5, 93 S.Ct. 2440, 2443, 37 L.Ed.2d 407, 412 (1973).
 
 
 [2]
 My colleagues defend their action in disposing of the parties' contentions on appeal by invoking the familiar doctrine that a court always has jurisdiction to determine its own jurisdiction. Majority Opinion at n. 16. Even assuming that they correctly characterize Part III of their opinion as a jurisdictional decision, I must respectfully disagree
 Federal courts, in my view, lack constitutional power to issue advisory opinions even on questions of their statutory jurisdiction. I do not perceive how Article III's limitation of the federal judicial power to "cases" or "controversies" can otherwise be understood. The situation here should be distinguished from one wherein a federal court, in holding that it lacks constitutional jurisdiction on one ground, passes over without addressing another possible constitutional impediment to its authority. E. g., Gilligan v. Morgan, supra note 1; see Baker v. Carr, 369 U.S. 186, 211, 82 S.Ct. 691, 706, 7 L.Ed.2d 663, 682 (1962).