## DUGAS *v.* AMERICAN SURETY CO.

No. 340. Argued January 13, 14, 1937.—Decided March 29, 1937.

416

418

422

*Mr. Ignatius Uzzo,* with whom *Mr. M. C. Scharff* was on the brief, for petitioner.

*Mr. Harry McCall,* with whom *Messrs. Victor Leovy, Henry H. Chaffe,* and *Jas. Hy. Bruns* were on the brief, for respondent.

MR. JUSTICE VAN DEVANTER, after making the foregoing statement, delivered the opinion of the Court.

1. The amount or penalty of the qualifying bond was $20,000.00. The surety's obligation was not to Dugas alone, but to the other claimants as well; and this obligation was not to pay all claims regardless of their aggregate, but to pay $20,000.00, or so much thereof as should be needed, and no more. Because the claims exceeded $20,000.00, the surety paid that sum into the registry of the federal court, there to abide the court's decree, and at the same time brought in that court its interpleader suit against all claimants, including Dugas, to the end that its liability on the bond might be terminated, and that the rights of the several claimants in the amount of the bond so paid into court might be judicially determined and the fund distributed accordingly.

2. The Interpleader Act of 1926, under which that suit was brought, makes provision for the filing in a federal district court of a bill of interpleader by a surety company which has executed a bond in the sum of $500.00 or more, under which two or more claimants, citizens of different States, assert adverse rights to the penalty; authorizes the payment of the amount of the bond into the registry of the court, there to await such disposal as the court may direct; and further provides in the latter part of § 2 and in § 3:

"SEC. 2. . . . Notwithstanding any provision of the Judicial Code to the contrary, said court shall have power

to issue its process for all such claimants and to issue an order of injunction against each of them, enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any other Federal court . . . on such bond . . . until the further order of the court; which process and order of injunction shall be returnable at such time as the said court or a judge thereof shall determine and shall be addressed to and served by the United States marshals for the respective districts wherein said claimants reside or may be found."

"SEC. 3. Said court shall hear and determine the cause and shall discharge the complainant from further liability; and shall make the injunction permanent and enter all such other orders and decrees as may be suitable and proper, and issue all such customary writs as may be necessary or convenient to carry out and enforce the same."

By plea and answer Dugas objected to being brought into the interpleader suit and grounded the objection upon the judgment, appeal and appeal bond in his earlier suit in the state court; but the objection was overruled, and the cause proceeded to the rendition of two related decrees.

In one decree, given September 19, 1932, the complainant surety, by reason of its payment of the amount of the qualifying bond into the court's registry, was discharged from any and all further liability on account of that bond, and the several claimants, including Dugas, were enjoined from instituting or prosecuting against the complainant surety, so discharged, any suit on account of any claim or right growing out of such bond. In the other decree, given April 20, 1933, the court determined the rights of the several claimants, including Dugas, in the fund paid into the registry, and directed its distribution among them on a pro rata basis—this decree being in exact accord with a stipulated request by all claimants including Dugas.

Taken together, the two decrees not only completely terminated the liability of the complainant surety on the qualifying bond, but also fixed the full measure of Dugas' right or claim under the bond, and in necessary effect determined that the judgment, appeal and appeal bond in his earlier suit in the state court did not put his claim beyond the reach of the interpleader suit, or require that it be dealt with differently from other claims.

Plainly the court had jurisdiction of both the subject matter and the parties. No appeal was taken from either decree. Therefore Dugas was bound by both decrees. Had he exercised his right to appeal he could have obtained a review of the rulings on his objection to being brought into the suit, on the bearing and effect of the prior judgment and proceedings in the state court, and on the right of the complainant surety to be discharged from further liability in respect of his claim. But these rulings were all made in the exercise of the court's jurisdiction, were subject to challenge and reëxamination only on appeal, and became conclusive on him in the absence of an appeal.

3. In the interpleader suit there was an actual, complete and judicially sanctioned payment of the qualifying bond by the surety, and it was on this basis that the surety was discharged from all further liability. While the payment was into the court's registry, and not directly to the claimants, it nevertheless was a lawful and effective payment under the Interpleader Act. In effect the first decree converted the claims under the bond into claims against the fund paid into the registry; and the second decree, made after a hearing in which all claimants were heard, directed and brought about a distribution of the fund among them according to their ascertained rights.

As Dugas' judgment in the state court was based solely on the qualifying bond, the payment of the bond and discharge of the surety, as effected in the interpleader suit,

operated, under recognized principles of law and equity, to extinguish his right under the judgment. He relied on the judgment in his several pleadings and the decrees fixed the measure of his claim conformably to the judgment. Even the costs awarded to him by the judgment were included in the computation. Thus it is plain that the interpleader suit and the decrees therein dealt with his claim as it was embodied in and evidenced by the judgment.

4. Whether, in subsequently bringing suit in the state court on the appeal bond, Dugas contravened the fair intendment of the decrees in the interpleader suit is the principal question arising on the supplemental bill. Both courts below answered the question in the affirmative.

The appeal bond was in the nature of a security for the satisfaction of the judgment in Dugas' suit on the qualifying bond; and in attempting to enforce this security he obviously was seeking to realize on the judgment. If his right under the judgment was extinguished he was not entitled to resort to the security; for the relation of one to the other was such that the extinguishment of his right under the judgment terminated his right in the security.[6]

It already has been shown in this opinion that his right under the judgment was extinguished by the proceedings and decrees in the interpleader suit.

With this understanding of the operation and effect of the decrees in that suit, it becomes plain that Dugas' action in bringing suit on the appeal bond and. thereby attempting to realize on the prior judgment, notwithstanding the extinguishment of his rights under it, was in contravention of those decrees.

[6] *Cage's Executors* v. *Cassidy,* 23 How. 109, 116; *Carpenter* v. *Longan,* 16 Wall. 271, 275; *Dodge* v. *Freedman's S. & T. Co.,* 93 U. S. 379, 382; *United States* v. *Chouteau,* 102 U. S. 603, 610–611. And see *Illinois Surety Co.* v. *Peeler,* 240 U. S. 214, 225.

His counsel contends otherwise, and seeks to support the contention by pointing out that the injunction did not directly forbid Dugas from suing on the appeal bond, but only from instituting or prosecuting any suit against the complainant surety on account of a right or claim growing out of the qualifying bond. But the injunction, being only one part of the decrees, is not the exclusive criterion of what was determined and effected by them. Its purpose was to forestall anticipated departures, not to limit other provisions or restrict their operation and effect.

By the other provisions it was adjudged that the complainant surety had complied with all of its obligations under the bond by paying the amount of the bond into the court's registry; that, by reason of this compliance, it was discharged from any and all further liability on account of the bond; and that the several claimants under the bond, all of whom had been brought in and heard, were entitled to designated portions of the fund so paid into the registry. Under this last provision each claimant was paid his portion, the fund being thereby exhausted. It also was adjudged that the fact that Dugas' claim was embodied in and evidenced by a judgment did not make it other than a claim under the bond or take it without the reach of the interpleader suit. He acquiesced in that and other rulings; and the amount of his claim and his proportionate share of the fund were fixed conformably to the judgment. He acquiesced also in this, and accepted the share so allotted to him. In this way the other provisions in the decrees accomplished as they were intended to do, the extinguishment of his right under the judgment; and they did this independently of the injunction.

Of the decisions under state interpleader statutes which are cited as if making for a different conclusion, it is enough to say, first, that in none was the statute substantially identical with the federal act of 1926; and, secondly,

that in such as involved questions approximately like those presented to the district court in the original suit there were locally appropriate applications for the exercise of appellate authority before the rulings became conclusive, which was not the case here.

Some reliance is placed on the fact that the suit on the appeal bond was against the surety thereon alone. But this does not make for a different result. As Dugas' right under the judgment was extinguished he was no more entitled to realize on the judgment by suing the surety on the appeal bond than by suing the principal. Besides, the surety, if cast in the suit and compelled to pay, would be entitled to reimbursement by the principal. The latter, therefore, may be heard to complain in the circumstances shown here.

5. The jurisdiction to entertain the supplemental bill is free from doubt. Such a bill may be brought in a federal court in aid of and to effectuate its prior decree to the end either that the decree may be carried fully into execution or that it may be given fuller effect, but subject to the qualification that the relief be not of a different kind or on a different principle.[7] Such a bill is ancillary and dependent, and therefore the jurisdiction follows that of the original suit, regardless of the citizenship of the parties to the bill or the amount in controversy.[8]

6. The power of the court to enjoin Dugas from further prosecuting his suit in the state court on the appeal bond has full support in §§ 2 and 3 of the Interpleader Act of 1926 before quoted, as also in settled adjudications

[7] Story's Equity Pleading, 9th ed., § 338; *Root* v. *Woolworth,* 150 U. S. 401, 410–412; *Local Loan Co.* v. *Hunt,* 292 U. S. 234, 239.

[8] *Root* v. *Woolworth, supra,* p. 413; *Local Loan Co.* v. *Hunt, supra.*

respecting the power of a federal court to protect its jurisdiction and decrees.[9]

*Decree affirmed.*

The CHIEF JUSTICE and MR. JUSTICE CARDOZO are of opinion that the decree should be reversed for the reasons stated by Sibley, J., in the court below.

MR. JUSTICE STONE did not participate in the consideration or decision of this case.

---

[9] *French* v. *Hay,* 22 Wall. 250; *Root* v. *Woolworth, supra,* p. 411; *Julian* v. *Central Trust Co.,* 193 U. S. 93, 112; *Madisonville Traction Co.* v. *Saint Bernard Mining Co.,* 196 U. S. 239, 245; *Looney* v. *Eastern Texas R. Co.,* 247 U. S. 214, 221; *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175, 183.