PRINTING SPECIALTIES AND PAPER
PRODUCTS DISTRICT COUNCIL NO.
2 et al., Plaintiffs,

v.

INTERNATIONAL PRINTING AND
GRAPHIC COMMUNICATIONS
UNION et al., Defendants.

No. CIV–2–77–98.

United States District Court,
E. D. Tennessee, Northeastern Division.

April 20, 1978.

Erma G. Greenwood, Knoxville, Tenn., for plaintiffs.

Neal P. Rutledge and Anthony F. Cafferky, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is a civil action by an association of local unions and certain of its officers seeking the resolution by this Court of a dispute between them and the defendant international union with reference to the latter's election of its officers. It was submitted to the Court for a decision on the merits on the basis of the record as it is now constituted. Pretermitting all other issues herein is the necessity for a determination of this Court's jurisdiction of the subject matter; for, without a finding that such exists, this Court is without power to proceed. *Memphis Am. Fed. of Tchrs., L. 2032 v. Bd. of Ed.*, C.A. 6th (1976), 534 F.2d 699, 701[1].

The United States district courts are not courts of general jurisdiction; rather, they have only such jurisdiction as has been prescribed by the Congress pursuant to the Constitution, Article III. *Graves v. Sneed*, C.A. 6th (1976), 541 F.2d 159, 161[2], certiorari denied (1977), 429 U.S. 1093, 97 S.Ct. 1106, 51 L.Ed.2d 539. Even where, as here, the parties do not appear to question the Court's jurisdiction, this Court has the independent obligation to determine for itself whether its jurisdiction has been invoked properly. *Leonard v. Abingdon Motor Company*, D.C.Tenn. (1971), 339 F.Supp. 218, 218–219[1].

Federal jurisdiction cannot be conferred by the consent of the parties; only Congress can do so. *Weinberger v. Bentex Pharmaceuticals* (1973), 412 U.S. 645, 652, 93 S.Ct. 2488, 2493, 37 L.Ed.2d 235, 241[3]; *Tatum v. Mathews*, C.A. 6th (1976), 541 F.2d 161, 163[1], n. 1. The burden was on the plaintiffs to have demonstrated that such jurisdiction exists, and the presumption is that the Court lacks jurisdiction over a particular case until it has been shown otherwise. *Alexander v. Hopkins*, D.C. Tenn. (1976), 433 F.Supp. 362, 363[1].

The plaintiffs seek first to invoke the Court's jurisdiction under the Labor

Management Relations Act, § 301. 29 U.S.C. § 185(a). Such statute grants the United States district courts jurisdiction over suits for, *inter alia*, the violation of contracts between labor organizations representing employees in an industry affecting interstate commerce, without respect to the amount in controversy and without regard to the citizenship of the parties.[1] An initial prerequisite to jurisdiction thereunder, however, is the breach of such a contract. *United Steelworkers, Etc. v. Jarl Extrusions, Inc.*, D.C.Tenn. (1975), 405 F.Supp. 302, 304[4], affirmed C.A. 6th (1976), 527 F.2d 648 (table). The plaintiffs contend that two such contracts are present herein: *i. e.*, the constitution of the defendant international union and a stipulation entered into by these parties in *Secretary of Labor, Etc. v. International Printing Pressmen, Etc.*, civil action no. 2288, this district and division.

■ Even if these do constitute "contracts" within the meaning of 29 U.S.C. § 185(a),[2] it seems clear that, before federal jurisdiction exists in an action for breach of the same, the intraunion dispute must have some potential external application to industrial peace in the labor-management relations field or some connection with a collective bargaining agreement. *Local Union No. 657, Etc. v. Sidell*, C.A. 7th (1977), 552 F.2d 1250, 1254–1255[2, 3], certiorari denied (1977), 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135; *1199DC, Nat. U. of H. & H. C. E. v. National U. of H. & H. C. E.* (1976), 175 U.S.App.D.C. 70, 72–73, 533 F.2d 1205, 1207–1208[1]; *Smith v. United Mine Workers of America*, C.A. 10th (1974), 493 F.2d 1241, 1242–1244[2]; *Hotel and Restaurant Employees Local 400 v. Svacek*, C.A. 9th (1970), 431 F.2d 705, 706; *Case v. Intern. Broth. of Elec. Workers, Etc.*, D.C.Alaska (1977), 438 F.Supp. 856, 858–859[2].

The basic purpose of the jurisdictional grant under 29 U.S.C. § 185(a) is to promote industrial peace by permitting enforcement in the federal courts of contracts made by labor organizations. *Retail Clerks v. Lion Dry Goods* (1962), 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503, 510 (headnote 5); *Textile Workers Union v. Lincoln Mills* (1957), 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972, 979 (headnote 3). Therefore, as was stated by the Tenth Circuit, " * * * [i]f Congress intended to turn over to the federal courts the control and supervision of internal union affairs which have no external application to industrial peace or to collective bargaining agreements * * * Congress would have said so explicitly. * * * " *Smith v. United Mine Workers of America, supra*, 493 F.2d at 1243–1244[2].

■ The plaintiffs make no claim herein that the defendants' alleged breach of the aforementioned contracts would have any external connection with industrial or economic peace, or that such would be related to a collective bargaining agreement.[3] Neither have they pointed to any evidence in this record showing that their intraunion dispute with the defendants falls into either of these categories, or that it has any impact whatever upon labor management relations.[4] Rather, the whole purport of this

1. Technically, 29 U.S.C. § 185(a) invokes the original federal court jurisdiction conferred by 28 U.S.C. § 1337. *Avco Corp. v. Aero Lodge, I. A. M. & A. W.* (1968), 390 U.S. 557, 561–562, 88 S.Ct. 1235, 1238, 20 L.Ed.2d 126, 130[6], rehearing denied (1968), 391 U.S. 929, 88 S.Ct. 1801, 20 L.Ed.2d 670.

2. A panel of this circuit's Court of Appeals has indicated that there appears to be no reason why a contract under 29 U.S.C. § 185(a) " * * * might not be expressed in a union constitution. * * * " *Trail v. International Broth. of Teamsters, Etc.*, C.A. 6th (1976), 542 F.2d 961, 968[5].

3. There is no duty on the part of this Court to create a claim which the plaintiffs have not spelled-out in their complaint. *Clark v. National Travelers Life Insurance Co.*, C.A. 6th (1975), 518 F.2d 1167, 1169[2].

4. See and *cf. Local Union No. 657, Etc. v. Sidell, supra*, where it was held that the plaintiff had made sufficient allegations of the external effects of the alleged contractual breach and further allegations that the defendant's conduct would affect the local union's relationships with employers. See also *Parks v. International Brotherhood of Electrical Wkrs.*, C.A. 4th (1963), 314 F.2d 886, 916, certiorari denied (1963), 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d

action is an attempt to get this Court to "meddle into" the purely internal affairs of the defendant international union. The plaintiffs, thus, failed to meet their burden of establishing the existence of this Court's jurisdiction under 29 U.S.C. § 185(a), and their claim thereunder hereby is DISMISSED for lack of jurisdiction of the subject matter. Rule 12(h)(3), Federal Rules of Civil Procedure.

■ Contending that the defendants' conduct is an attempt to circumvent this Court's orders in the aforenamed civil action, the plaintiffs also seek to invoke this Court's ancillary jurisdiction. It is clear that this Court has the ancillary jurisdiction to take whatever steps it deems necessary to properly enforce and protect its decrees in civil action no. 2288. *Dugas v. American Surety Company* (1937), 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720, 727–728 (headnote 3); *Minnesota Co. v. St. Paul Co.* (1864), 2 Wall. (69 U.S.) 609, 631–635, 17 L.Ed. 886, 894–895; *Hamilton v. Nakai*, C.A. 9th (1971), 453 F.2d 152, 157[5], certiorari denied (1972), 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332, *Baker v. Gotz*, D.C. Del. (1976), 415 F.Supp. 1243, 1247[4]; *Central of Georgia Ry. Co. v. United States*, D.C.D.C. (1976), 410 F.Supp. 354, 357[1], affirmed without opinion (1976), 429 U.S. 968, 97 S.Ct. 474, 50 L.Ed.2d 578; *Castro v. Beecher*, D.C.Mass. (1975), 386 F.Supp. 1281, 1282[1].

Civil action no. 2288 was commenced in this Court by the Secretary of Labor, challenging the validity of the defendant international union's 1968 election of officers. It was contended by the plaintiff therein that such election had been in violation of certain provisions of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401–531, esp. 29 U.S.C. §§ 481–483. After several years of litigation, the

parties reached a settlement of their controversy, and, under the terms of which stipulated, *inter alia*, that:

\* \* \* \* \* \*

2. Defendant agrees to amend its Constitution and Laws in accordance with the revisions as agreed upon by the respective parties, a copy of which is attached to this Stipulation as Exhibit A and made a part hereof.

\* \* \* \* \* \*

4. Defendant will conduct its next regularly scheduled election of officers, including nominations, with the technical assistance of the Secretary of Labor, in accordance with the requirements of the Labor-Management Reporting and Disclosure Act of 1959, and insofar as lawful and practicable, in accordance with the Constitution and Laws of defendant as amended in accordance with the revisions attached to this Stipulation as Exhibit A and made a part hereof. The extent and nature of said technical assistance will be agreed upon at a future date by the respective parties.

\* \* \* \* \* \*

The foregoing stipulations were approved by the Court on August 31, 1973 and, on September 18, 1974, the Court entered an agreed order of the parties which required the defendant international union to comply with the terms of such stipulations, and particularly paragraph 2 thereof, by adopting in its constitution the provisions relating to the election of its officers, not later than its next scheduled convention. That action was thereupon dismissed.

■ The aforementioned agreed order, which by its terms incorporated by reference the parties' earlier stipulation, constituted a consent decree.[5] Accordingly, its

---

142, where it was found that the internal union problems would " \* \* \* have traumatic industrial and economic repercussions. \* \* \*" Similarly, in *Drywall Tapers, Etc. v. Operative Plasterers', Etc.*, C.A. 2d (1976), 537 F.2d 669, 673[1], the interunion contract had been " \* \* \* negotiated by two international unions to resolve work assignments within the

construction industry in an effort to prevent labor warfare."

5. " \* \* \* Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save them-

scope must be determined within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it or by reference to the underlying statutes. *United States v. ITT Continental Baking Co.* (1975), 420 U.S. 223, 233, 95 S.Ct. 926, 932–933, 43 L.Ed.2d 148, 159[7]; *United States v. Armour & Co.* (1971), 402 U.S. 673, 682, 91 S.Ct. 1752, 1757–1758, 29 L.Ed.2d 256, 263[4]. " * * * Th[at] instrument must be construed as it is written, and not as it might have been written. * * * " *Idem.*

It having been stipulated herein that the defendant international union did adopt in 1976 at its next scheduled convention the provisions referred to in paragraph 2 of the parties' aforementioned stipulation, the defendants herein have not violated same. It is undisputed herein that the defendant union's next regularly scheduled election of officers is in February, 1980. This being so, the defendants could hardly have violated paragraph 4 of the parties' stipulation, since there has been no such election and will not be one for nearly 2 years.

■ The thrust of the plaintiffs' claim herein, however, is that the defendants intend to submit to the international membership, pursuant to the constitution, a referendum vote on a proposal which would delete from such constitution certain of the amendments adopted in 1976 pursuant to the consent decree. Apparently, it is contended that, if this is done, the 1980 election will not be conducted in accordance with the orders of this Court. At this time, these fears appear too remote and speculative to permit this Court to intrude itself into the internal affairs of the defendant union under the guise of enforcing its prior orders.

Counsel for the defendants concede that certain provisions of the proposed referendum are contrary to this Court's aforementioned orders. Even so, however, there is no reasonable assurance at the present time that the union membership will adopt the same. Furthermore, even if such contrary provisions are adopted and the constitution is amended accordingly, it does not appear at this time that the defendants would elect to follow them in disregard of the Court's orders at the time of the 1980 election. It is beyond dispute that the 1980 election must be held in accordance with the amendments adopted in 1976 pursuant to this Court's orders.

It must be assumed that the defendants will abide by the law by complying with the lawful orders of this Court. See *TRW, Inc., TRW Michigan Division v. National Labor Relations Board*, C.A. 6th (1968), 393 F.2d 771, 774[4]. Should the defendants, in fact, decide to hold their 1980 election in a manner contrary to this Court's mandate, they will risk the possibility of serious sanctions including criminal contempt.[6] Moreover, if such chosen election procedure is not in accordance with the Labor-Management Reporting and Disclosure Act of 1959, *supra*, the election may be declared void and a new one required under the supervision of the Secretary of Labor. See: 29 U.S.C. § 482(c); *Wirtz v. Local 153, G. B. B. A.* (1968), 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705.

The consent decree involved did not outlaw the mere submission to referendum vote the defendants' proposed amendments to the constitution. If the parties in civil action no. 2288 had intended to cover this particular situation, they could have easily so provided. It is not for this Court to rewrite such decree, so as to include therein a prohibition which the parties themselves apparently chose not to include.

---

selves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the

resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. * * * " *United States v. Armour & Co., supra*, 402 U.S. at 681–682, 91 S.Ct. at 1757, 29 L.Ed.2d at 263[2].

**6.** See 18 U.S.C. § 401(3).

■ " * * * [T]here [has] emerged a 'general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts.' * * * " *Wirtz v. Local 153, G. B. B. A., supra,* 389 U.S. at 471, 88 S.Ct. at 648, 19 L.Ed.2d at 713[6], quoting from *Calhoon v. Harvey* (1964), 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190, 194. Thus, a federal court must exercise great reluctance before involving itself in the internal dispute of a labor organization. *Trail v. International Broth. of Teamsters, supra,* 542 F.2d at 968[62]; *Vestal v. Hoffa,* C.A. 6th (1971), 451 F.2d 706, 709[2], certiorari denied (1972), 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135; *Stettner v. International Printing Pressmen & A. U.,* D.C.Tenn. (1967), 278 F.Supp. 675, 676[1].

While it might be more convenient for all the parties hereto if the Court were to instruct them precisely how they should conduct their 1980 election, this Court does not sit to render such advisory opinions. Neither is it a proper function of this Court to accede to the defendants' request that it redraft the proposed amendment so as to make it conform with the parties agreement. The parties agreed their 1980 election would be conducted with the technical assistance of the Secretary of Labor. It is suggested that they avail themselves thereof.

■ The plaintiffs seek herein a permanent injunction, prohibiting the defendants from processing the aforementioned referendum. The principles of equity militate heavily against the grant of an injunction except in the most extraordinary circumstances. *Rizzo v. Goode* (1976), 423 U.S.

362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561, 574[8]. " * * * An injunction can issue only after the plaintiff has established that the conduct sought to be enjoined is illegal and that the defendant, if not enjoined, will engage in such conduct. * * * " *United Transportation Union v. Michigan* (1971), 401 U.S. 576, 584, 91 S.Ct. 1076, 1081, 28 L.Ed.2d 339, 346[12].

■ The plaintiffs failed to meet their burden of demonstrating that the present situation requires the exercise of this Court's extraordinary injunctive processes at this time. Accordingly, at the present time the plaintiffs hereby are DENIED all relief herein; however, this is without prejudice to their seeking appropriate sanctions at a later date should the defendants violate this Court's prior orders, or in the event that such a violation appears imminent.[7] Rule 58(1), Federal Rules of Civil Procedure.

The Court having rendered a decision on the merits of this action, the preliminary injunction herein hereby is

DISSOLVED.[8]

---

7. This disposition is also without prejudice to any right the Secretary of Labor might have against the defendants. It is noted that civil action no. 2288 was dismissed " * * * with leave to [the] plaintiff [Secretary of Labor] to reinstate said case on the docket of this Court for appropriate disposition should [the] defendant fail to comply with [the Court's] order."

8. The purpose of a preliminary injunction is to maintain the *status quo* " * * * pending determination of an action on its merits. * * * " *Blaylock v. Cheker Oil Co.,* C.A. 6th (1976), 547 F.2d 962, 965[2], later appeal *sub nom. Stenberg v. Cheker Oil Company,* C.A. 6th (1978), 573 F.2d 921.