Reuben SARABIA, Louis Gonzales, Rene Riviera and Gilbert Terill, Plaintiffs-Appellees,

v.

TOLEDO POLICE PATROLMAN'S ASSOCIATION, Intervening Defendant-Appellant.

No. 78-3545.

United States Court of Appeals, Sixth Circuit.

Argued April 17, 1979.

Decided June 25, 1979.

Norman G. Zemmelman, Britz & Zemmelman, Toledo, Ohio, Charles A. Stupsker, Rowley, Stupsker & Wagner, Toledo, Ohio, for intervening defendant-appellant.

R. Michael Frank, Dale A. Wilker, Toledo, Ohio, for plaintiffs-appellees.

Before WEICK and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

LIVELY, Circuit Judge.

This appeal is from an order in an action filed seven years ago for the purpose of increasing minority membership on the police force of Toledo, Ohio. The complaint charged that past and present discriminatory practices in recruiting, examining and hiring police officers resulted in largely excluding black and Hispanic Americans[1] from the force. Relief was sought under 42 U.S.C. §§ 1981 and 1983 upon the claim that both the due process and equal protection clauses of the 14th Amendment were violated.

The original defendants in the action were the chief of police and other city officials. Several parties were permitted to intervene, including the Toledo Police Patrolman's Association, Inc. (TPPA), which is the only appellant. All the parties, including TPPA, agreed to the entry of a consent decree on November 25, 1974. It is the contention of the appellant that the order appealed from, which was entered July 17, 1978, "completely disregarded one of the express limitations set forth in the consent decree . . .," and was beyond the power of the district court. The appellees

1. This appeal concerns only black applicants for appointment, as the number of Hispanic-Americans on the police force is now considered satisfactory by the plaintiffs.

maintain that the district court retained jurisdiction to enforce the consent decree and that the order appealed from merely interpreted the decree and took steps which were necessary to make it effective. We agree with the appellees and affirm the order of the district court.

The significant requirements of the consent decree are that validated examinations be used in testing applicants for appointment to the police force and that the city engage in a comprehensive affirmative action and minority recruitment program. The stated goal of the parties was to attract sufficient numbers of minority applicants "so that within five (5) years from the date of this order, the ratio of minority employment within the Division of Police reasonably reflects the ratio of each minority group to the total population of the City of Toledo . . .." The preamble and several provisions of the consent decree follow:

> WHEREAS, petitioners commenced this action in an effort to redress alleged discrimination against Blacks, Hispanics, and other minority citizens in employment within the Toledo Police Department, and

> WHEREAS, the City of Toledo is strongly committed to the concept of affirmative action to erase any vestiges of past employment discrimination within its municipal government, and

> WHEREAS, all parties to this action agree that only qualified candidates should be appointed to the police force, that no employment quotas should be imposed, and the existing requirements and standards for police officers should not be lowered, and

> WHEREAS, both parties agree that promotion and hiring should be based on validated tests, and

> WHEREAS, pursuant to administrative regulation 13, the defendants are committed to the concept of well-integrated departments at all levels of municipal government.

> \*    \*    \*    \*    \*    \*

> 4. (c) Administrative Regulation 13 of the City of Toledo, promulgated on March 7, 1967, shall, in its full content, apply to recruitment and appointment to the Toledo Police Department. Once a validated test is given to a group of applicants sufficient to represent substantial progress toward the above stated goal, the Police Department shall retain the discretion to select recruits from the resulting certified list subject to the provisions of AR–13 and in particular paragraph B(2) thereof.

> \*    \*    \*    \*    \*    \*

> 6. This Court shall retain jurisdiction over this matter for the entry of such further orders as may be appropriate to effectuate the provisions of this Order, and to monitor the progress of the Defendants in meeting its Affirmative Action obligations and its stated employment goal.

Administrative Regulation 13 (AR 13), twice referred to in the decree, is entitled "Policy Regarding Employment of Minority Group Applicants." It is a statement of commitment to equal employment opportunities for minority groups, especially black Americans. Paragraph B(2), which is particularly invoked by the consent decree, requires that the office of the city manager—

> Instruct the administrative staff to give special consideration to applicants seeking employment who qualify on a relatively equal basis in order to realize the concept of a well-integrated department. This will be further emphasized in those departments in which integration is disproportionate or non-existent.

The consent decree makes no reference to specific procedures to be followed in certifying candidates for appointment to the police force. The Toledo Division of Police has traditionally followed the "rule of three" which requires that the civil service commission certify the names of the three candidates standing highest on the eligibility list for each position to be filled. The appointment must then be made from this group of three. The order of the district court from which this appeal is taken sus-

pended the rule of three. Instead of following the traditional procedure the city defendants were directed to certify for appointment the names of all black applicants who had passed the last examination, without. regard to their positions on the eligibility list. The most recent examination was given on March 18, 1978. Of the 309 persons who took the examination, 193 made a passing grade of 70 or better.[2] Eighteen of the 193 who passed the examination were black.

## I

█ The district court and this court denied motions to stay the July 17th order, and appointments to the police force were made in 1978 from the expanded eligibility list which contained all 18 black candidates who received a passing grade on the written examination. It was suggested from these facts that this appeal might be moot. This court previously dismissed an appeal from an earlier order in this case on grounds of mootness. *Sarabia v. Duck*, unreported order, (6th Cir. Nos. 76–1007/08, decided March 8, 1977). However, the reasoning of the Supreme Court in *County of Los Angeles v. Davis*, —— U.S. ——, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), indicates that the present appeal is not moot. If the issue of the district court's authority to suspend the rule of three is not decided, the city will be required to use the rule in making future appointments and the condition of under-representation by minorities which the consent decree was intended to alleviate will continue or become more pronounced. Further, the issues in this case concern normal hiring which occurs periodically, rather than a single emergency situation of a non-recurring nature such as existed in *Davis*. Though the appeal in *Davis* was held to be moot, the two-pronged test set forth in that case, as applied to the facts in the present case, dictates a contrary result.

## II

█ Throughout its brief and oral argument the appellant has charged that the district court modified the consent decree in its July 17th order. Many cases are cited for the proposition that a consent decree may not be altered or modified without agreement of the parties who consented to its entry, in the absence of a change of law or circumstances which would render its continuance without change unlawful or oppressive. There is no need to discuss these cases because we conclude that the order temporarily suspending the rule of three did not work a modification of the consent decree. The only modification contained in the July 17th order was one requested by the appellant TPPA—that the time for achieving the goals stated in the decree be extended by eliminating the reference to their achievement within five years after entry of the consent decree.

Several orders were entered by the district court after dismissal of the previous appeal on March 8, 1977. Following a hearing on April 25, 1977 the district court entered a preliminary injunction on April 28, 1977 which prohibited the city defendants from certifying any eligibility list for the selection of police officers which does not contain at least three times as many names as there are positions to be filled. This issue arose because the city was not certifying three times as many candidates as there were vacancies. Instead it had been following Toledo Civil Service Rule 60.09, which interpreted the rule of three as follows when there were multiple vacancies:

### SECTION 60.09. Certification.

When a requisition is received, certification shall be made from a reemployment list for the class of positions in question, one name for each vacancy to be filled. If there is no reemployment list or if those on the reemployment list decline appointment, certification of the three persons standing highest on the ap-

---

2. The written examination is given only to those applicants who have passed a physical exam. In addition to passing the written exam-

ination in order to be appointed, a candidate must qualify as to character and perform satisfactorily at a personal interview.

propriate eligible list shall be certified. The Secretary of the Commission may provide an additional name or names if any of the persons certified are not interested, fail to show for interview, decline appointment, or otherwise are not available.

If more than one vacancy is to be filled, the number of names to be certified shall be determined in the following manner:

For 1 through 4 vacancies, add 2 names to the number of vacancies.

For 5 through 8 vacancies, add 4 names to the number of vacancies.

For 9 through 12 vacancies, add 6 names to the number of vacancies.

For 13 through 16 vacancies, add 8 names to the number of vacancies, etc.

This practice had resulted in an eligibility list of 96 names for 64 vacancies in 1977. In its order of April 28, 1977 the district court, in addition to ordering the certification of three times as many candidates as there were vacancies, also stated that the city defendants, at their option, could certify all black applicants who passed the last competitive examination without regard to their numerical positions on the eligibility list.

TPPA made a motion for reconsideration of the April 28, 1977 order and the plaintiffs made a motion to modify the consent decree by directing the precise methods to be followed by the defendants in achieving the goals stated in the decree. The district court denied both motions. It specifically declined to modify the consent decree. In its order denying reconsideration entered on June 27, 1977, the district court stated that the only effect of its order of April 28th was to suspend Civil Service Rule 60.09 to the extent that it impeded operation of the consent decree. There was no appeal from the preliminary injunction or a later order of December 22, 1978 making the injunction permanent for the life of the consent decree.

On May 26, 1978 the plaintiffs made a motion to modify the order of April 28, 1977 to require the city defendants to do that which the April 28th order gave them permission to do; i. e., certify the names of all black applicants who passed the most recent examination for police recruits regardless of their numerical standing. The plaintiffs made no motion to modify the consent decree. The most recent examination was the one previously referred to, held on March 18, 1978. If the rule of three were followed, only two black applicants would be certified. If the rule of three were suspended as to black applicants the eligibility list would contain the names of 18 black candidates. The city defendants joined in this motion and TPPA opposed it. The order of July 17, 1978 which granted the plaintiffs' motion is the only district court action under review in this appeal.

### III

Two questions are presented: (1) whether the district court had authority under the consent decree to enter the order which suspended a civil service rule, and (2) if such authority existed whether the district court abused its discretion in entering the order of July 17, 1978.

### A

When the district court entered the consent decree it retained jurisdiction "for the entry of such further orders as may be appropriate to effectuate the provisions of this Order, and to monitor the progress of the Defendants in meeting its Affirmative Action obligations and its stated employment goal." The record of a hearing held on July 6, 1978 makes it clear that little progress had been made toward achieving this goal during the three and one-half years since entry of the decree. In 1974 approximately 7% of the Toledo police force was black and by 1978 the force was approximately 8.4% black. Throughout this period the general population of Toledo was approximately 14% black.

Even if the district court had not expressly retained jurisdiction, it is settled that "courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). The strict application of the rule of three was resulting in elimination of qualified black applicants from consideration for appointment to the police force. The consent decree does not incorporate any particular procedure for selecting police officers. Nowhere in the consent decree is there an agreement to follow the rule of three or any other particular method of compiling eligibility lists. It requires only that qualified applicants be appointed, that no quotas be imposed and that existing standards and requirements not be lowered. Otherwise the entire thrust of the decree is toward affirmative action to achieve a "well-integrated department[ ]." The only administrative regulation referred to in the decree is AR 13 which requires that special consideration be given minority applicants "who qualify on a relatively equal basis . . . ." We conclude that it was within the power of the district court to suspend a civil service rule whose application prevented achievement of the stated goal of the consent decree.

### B

TPPA urges the proposition that the July 17th order violated the provision of the consent decree that "the existing requirements and standards for police officers should not be lowered . . . ." While admitting that all who passed the March 18 examination are qualified, TPPA argues that some are more qualified than others and that the standards are lowered if less qualified candidates are chosen over better qualified ones. It maintains that competitiveness has always been an element of the examining process and that under the July 17th order the examination becomes "merely qualifying" for black applicants. The district court found that the examination was competitive since only 193 of the 309 who took it made a passing score of 70 or

better. The court also made a specific finding that the order of July 17th would not lower the standards for police officers. If this finding is supported by the record, the order did not violate the terms of the consent decree, and the district court did not abuse its discretion in entering it.

Dr. Albert B. Palmer, a psychologist whose qualifications were admitted, testified, "My opinion is that all those passing the tests were relatively equally qualified." Another witness for the plaintiffs was David A. Boston, Commissioner of Civil Service of Toledo. Mr. Boston described the testing procedures and established that although 18 black applicants received scores of 70 or better on the March 18th examination, only two of these were in the top 87. Applying the rule of three, the top 87 names would be certified as eligible since there were 29 positions to be filled. Mr. Boston expressed the opinion that all who passed were "relatively qualified" to be considered for appointment. He explained this conclusion as based on the fact that all who passed did very well on the examination. Some did better than others but there was not a great deal of difference in the terms of "raw scores" between those who were very high on the list and those who scored 70.[3] As a result of this observation he stated he felt that all who passed were "relatively equally qualified to be considered for appointment."

Appellant contends that the witness Boston testified only that the passing candidates were "relatively qualified," which it contends is meaningless. However, as set forth above, in his final answer, given on cross-examination, this witness used the phrase "relatively equally qualified," which is the exact language used in AR 13. Thus there is undisputed expert testimony which supports the finding of the district court that the standards for police officers would not be lowered by certifying all black applicants who passed the written examination. Certifying these candidates as eligible for

---

**3.** A score of 70 does not indicate that 70% of the questions were answered correctly. It is a score which results from "converting" the raw score on two written tests by approved procedures.

appointment does not assure their appointment. However, it is a permissible application of paragraph B(2) of AR 13 which mandates special consideration for minority candidates who qualify on a relatively equal basis.

Though the July 17th order is not specific on this point, we construe it as merely expanding the eligibility list. None of the sixteen additional eligible applicants would replace or "bump" an otherwise eligible white applicant. The final selections would be made from a list which included all 18 qualified black candidates without reducing the number of otherwise eligible white applicants.

### IV

In an argument that is not completely clear the appellant appears to contend that the July 17th order runs afoul of the recent opinions of the Supreme Court in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). These decisions established the rule that violation of equal protection may not be established in an action brought pursuant to 42 U.S.C. § 1983 by a mere showing of disparate impact of governmental action; there must be a showing of an intent to discriminate. The concern in both cases was with the nature of the proof required to establish entitlement to relief. It is hard to understand how these decisions could be applied to a case involving a consent decree. Here the parties agreed that certain steps should be taken "to erase any vestiges of past employment discrimination. . . ." When this agreement was submitted and entered by the court as a consent decree all issues of proof were dispensed with. Whatever may have been the understanding of the parties with respect to the requirements for proving a constitutional violation at the time of the decree, they all agreed upon a course of conduct to bring about a better representation of minority groups on the Toledo police force. This agreement was solemnized at their request by entry as an order of the district court. The district court did not violate *Washington v. Davis* or *Arlington Heights* by entering a subsequent order to effectuate the stated goal of the consent decree.

### CONCLUSION

The district court's order of July 17, 1978 did not purport to, or in fact, alter or modify the consent decree of November 25, 1974. Rather it was an order within the court's specifically retained jurisdiction. It has long been recognized that courts of equity have power to enter supplemental orders to enforce, implement and effectuate their judgments and decrees, even when a new complaint or "bill" is required. *Root v. Woolworth*, 150 U.S. 401, 410–11, 14 S.Ct. 136, 37 L.Ed. 1123 (1893); *Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Dugas v. American Surety Co.*, 300 U.S. 414, 428, 57 S.Ct. 515, 81 L.Ed. 720 (1936); *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). In a case such as the present one, which involved the court in an ongoing remedial process based on a consent decree, the existence of such power is obvious. Not only did the order in question not violate the consent decree; it appears to afford the very type of special consideration to minority candidates required by paragraph B(2) of AR 13, which was specifically adopted in the consent decree.

The judgment of the district court is affirmed.