SECURITIES INDUSTRY ASSOCIATION, Plaintiff,

v.

BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, et al., Defendants,

Bankers Trust Company, Defendant-Intervenor.

Civ. A. No. 80–2730.

United States District Court, District of Columbia.

Feb. 18, 1986.

John M. Liftin, James B. Weidner, David A. Schulz, Alejandro E. Camacho, Rogers & Wells, Washington, D.C., for plaintiff.

Michael Bradfield, Gen. Counsel, Richard M. Ashton, Associate Gen. Counsel, Kay E. Bondehagen, Bd. of Governors of the Federal Reserve System, Washington, D.C., for defendants.

John W. Barnum, Laura B. Hoguet, W. Michael Tupman, Craig Alan Wilson, White & Case, Washington, D.C., for defendant-intervenor.

G. Duane Vieth, Leonard H. Becker, Daniel I. Prywes, Peter K. Kautsky, Arnold & Porter, Washington, D.C., for Goldman, Sachs & Co.

Harvey L. Pitt, Henry A. Hubschman, David M. Miles, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for Investment Co. Institute.

Michael S. Helfer, Russell J. Bruemmer, Wilmer, Cutler & Pickering, Washington, D.C., for America N.T. & S.A., Citibank, N.A., First Nat. Bank of Boston, First Nat.

Bank of Minneapolis, NCNB Nat. Bank of North Carolina, Security Pacific Nat. Bank, and Sovran Bank, N.A.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Before the Court is plaintiff Securities Industry Association's ("SIA's") motion to enjoin defendant-intervenor Bankers Trust Company from further sales of commercial paper on behalf of third-party issuers. On February 4, 1986, 627 F.Supp. 695, this Court issued a Memorandum Opinion and Order ("February 4 Opinion") holding that such sales violated the Glass-Steagall Act. SIA filed this motion on February 6, following public statements by Bankers Trust that it intended to continue its placement services while it appealed the decision. *See* Wall St.J., Feb. 5, 1986, at 2, col. 2. Bankers Trust filed its opposition and a cross-motion for a stay of the February 4 Opinion on February 10. The Court heard oral arguments on the motions on February 12. For the reasons set forth below, the Court grants plaintiff's motion for an injunction, but stays its effect until March 1, 1986, and denies Bankers Trust's motion for a stay of the February 4 Opinion.

■■■■ At the outset, Bankers Trust raises a jurisdictional objection to the issuance of an injunction, which merits little discussion. The bank contends that this Court lacks personal jurisdiction over it because it intervened only for the limited purpose of defending the legality of defendant Federal Reserve Board's June 4, 1985 Statement, and for no other purpose. Bankers Trust's Opposition at 10. This argument is incorrect both as a matter of fact and law. In its motion to intervene, Bankers Trust did not limit its participation to the academic exercise of defending the Board's June 4, 1985 Statement. The bank stated that its intervention in the case was necessary "[i]n order to defend the legality of *its service*," Motion of Bankers Trust Company for Leave to Intervene as of Right at 2 (emphasis supplied), and noted that "[t]he controversy between the Board and the securities industry is based on the activities of Bankers Trust ... and thus directly and substantially affects [its] business. *Bankers Trust stands to gain or lose from this Court's decision." Id.* at 3 (emphasis supplied). Moreover, the bank simply could not have limited this Court's jurisdiction over it in the manner it suggests. As an intervenor of right, Bankers Trust became "a full participant in the lawsuit and is [to be] treated just as if it were an original party." *Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007, 1017 (D.C.Cir. 1985). It assumed the risk that it would not prevail and that an order adverse to its interests would be entered. *Id.;* 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1920 at 611 (1972). Indeed, the possibility that plaintiff would obtain relief against it was the price Bankers Trust paid for its intervention. *District of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 132 (D.C.Cir.1985). The Court, therefore, concludes that it has personal jurisdiction over Bankers Trust sufficient to enjoin its commercial paper sales activities.[1]

■■■ Bankers Trust next argues that use of Rule 59(e) is an improper procedural device to expand the scope of relief sought in SIA's original complaint. The bank cites *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 450–

---

1. Bankers Trust also filed a notice of appeal on February 10, 1986. While a notice of an appeal ordinarily divests a district court of jurisdiction and confers it on the court of appeal, *see Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225 (1982), that rule does not obtain in a case such as this one, where a party has filed a timely motion under Rule 59 to amend a judgment. *See* Fed. R.App.P. 4(a); 9 J. Moore's, *Moore's Federal Practice* ¶ 203.11 (1985). In addition, district courts retain jurisdiction to issue orders regarding bonds, or to modify, restore or grant injunctions. *Venen v. Sweet,* 758 F.2d 117, 120 n. 2; Fed.R.App.P. 7 and 8. Accordingly, Bankers Trust's notice of an appeal in no way undermines this Court's jurisdiction to act on plaintiff's motion for an injunction, and it is therefore unnecessary to rule on plaintiff's motion to declare Bankers Trust's filing of the appeal null and void.

51, 102 S.Ct. 1162, 1165–66, 71 L.Ed.2d 325 (1982), a case in which the Supreme Court stated that Rule 59(e) only permits courts to rectify mistakes or reconsider matters properly encompassed in a decision on the merits, and argues that SIA, in moving for an injunction, is seeking something entirely new. *White,* however, involved a motion under Rule 59(e) for an award of attorney's fees—a matter clearly beyond those encompassed in the decision on the merits. Here, SIA seeks an injunction to give effect to the Court's February 4 ruling that Bankers Trust's commercial paper activities violate federal law. A court's authority to issue injunctions in aid of its decrees is unquestioned. *See United States v. New York Telephone Co.,* 434 U.S. 159, 172–73, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977); *Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937); *Marshall v. Local Union No. 639, International Brotherhood of Teamsters,* 593 F.2d 1297, 1302 (D.C.Cir.1979). Courts necessarily have the power to enter "such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise." *Mississippi Valley Barge Line Co. v. United States,* 273 F.Supp. 1, 6 (E.D.Mo.1967), *aff'd sub nom. Osbourne v. Mississippi Valley Barge Line Co.,* 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968). Bankers Trust has made clear its intent to continue to sell commercial paper, notwithstanding this Court's ruling that those sales are illegal under the Glass-Steagall Act. An order enjoining further sales is obviously in aid of the Court's February 4 judgment and is accordingly proper under Rule 59(e).

■ Bankers Trust's final procedural objection to issuance of an injunction is that the Glass-Steagall Act does not create a private cause of action and thus a private party such as SIA cannot use it to enjoin the bank. The Court, however, need not reach the question of whether the Act creates an implied right of action, as its authority to issue an injunction does not derive from that statute, but rather from its inherent power to enter orders in aid of its decree. Moreover, this action was brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Section 2202 of that Act "empower[s] ... district court[s] to grant supplemental relief, including injunctive relief." 28 U.S.C. § 2202; *see also Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.,* 255 F.2d 518, 522 (2d Cir.), *cert. denied,* 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958). Whether or not the Glass-Steagall Act creates a private cause of action, therefore, is simply irrelevant for purposes of determining whether this Court may enjoin Bankers Trust's sales activities.

■ Turning then to the appropriateness of an injunction, the Court is aided by its earlier conclusion that Bankers Trust's activities violate the Glass-Steagall Act. *See* February 4 Opinion. That Act embodies Congress' determination that a complete separation of commercial from investment banking necessarily inures to the benefit of the public. *See Securities Industries Association v. Board of Governors,* 468 U.S. 137, ——, 104 S.Ct. 2979, 2985, 82 L.Ed.2d 107 (1984). The Court, of course, is not to second-guess the wisdom of that judgment. Having found that Bankers Trust's sales of third-party commercial paper contravene the flat prohibitions of the Act, it follows that these sales are detrimental to the public good. Against this presumption of public harm, the bank offers essentially two arguments as to why an injunction should not issue, or, if one does, why it should be stayed: (1) that an injunction would cause even greater harm by disrupting the financial markets; and (2) that an injunction would cause irreparable harm to the bank itself. With respect to the first of these contentions, the bank has offered little evidence to support its prediction that far-reaching turmoil will issue if its activities are enjoined, and indeed, some of the bank's own statements belie such an assertion. Bankers Trust submitted the affidavit of Kevin F. Burke, Vice President of its Commercial Paper Group, who stated that all of the approximately 50 commercial pa-

per issuers that the bank serves have expressed concern about the disruption to the commercial paper market posed by the Court's February 4 Opinion. Burke Affidavit at ¶ 4. Attached to the affidavit, however, are five presumably representative letters from the bank's commercial paper clients, not one of which contains any prediction of dire consequences for the commercial paper market generally.[2] More importantly, in arguing that its activities pose little harm to the interests of SIA, Bankers Trust concedes that it accounts for only 2.5 percent of the commercial paper market. Burke Affidavit ¶ 9. It is difficult to see how an injunction against the bank would "create undesirable turmoil in the market for commercial paper" with "far-reaching repercussions," given its small share of the market. In addition, nearly half of Bankers Trust's clients already use more than one commercial paper dealer, Weidner Affidavit, Exh. B, and thus could transfer their business without excessive disruption of their short-term financing needs.

The bank's second argument is that it will be irreparably harmed if this Court enjoins its activities. An injunction, it contends, will destroy the client base it has built up over the past seven years, since its present customers will not return to it even if the Court of Appeals subsequently finds its services to be legal under the Glass-Steagall Act. In short, the bank claims that an injunction will effectively strip it of its right to an appeal. In advancing this argument, both in opposition to the injunction and in support of its motion for a stay, Bankers Trust relies extensively on *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977), a case in which the Court of Appeals emphasized that a stay may be appropriate even where the district court finds that the movant has little likelihood of success on the merits. Injunctive relief pending appeal, the Court stated, is appropriate in order to maintain the status quo where serious legal issues are presented, little if any harm would befall the public in the interim, and denial of such relief would cause irreparable harm to the movant. *Id.* at 844. These same factors are present here, Bankers Trust claims, and counsel against an injunction, or in favor of a stay, while an orderly appeal is taken.

In *Holiday Tours*, however, the Court noted that the case before it was not one "where the Commission has ruled that the service prformed by appellant is contrary to the public interest." *Id.* at 843. That is decidedly not the situation here. Bankers Trust's activities have been found to violate federal law, and thus are most definitely contrary to the public interest. At bottom, the bank is making the extraordinary request that this Court maintain a status quo that the Court has concluded is illegal. Under these circumstances, Bankers Trust's showing of irreparable harm would have to be overwhelming indeed in order to justify a stay.

To be sure, Bankers Trust will suffer considerable harm if its placement services are enjoined; at present, it has outstanding over $4 billion of commercial paper that it has placed on behalf of issuers. However, the bank has not demonstrated that the harm it will suffer if an injunction issues will be irreparable. It does not indicate how much income it stands to lose if enjoined from further sales,[3] or what the effect of such a loss of revenues would have on its *overall* net worth. It is clear, however, that an injunction would not put Bankers Trust out of business. Accordingly, the bank could resume its services if the Court of Appeals ultimately decides they are legal. While this would no doubt entail

---

**2.** The letters, although written by five different companies, state in virtually identical language that each company would be forced to switch to another commercial paper placement agent if Bankers Trust is enjoined, and that each would be unlikely to return to the bank's services in the event the Court of Appeals upholds the legality of the bank's activities. The letters appear to reflect more the concerns of the bank itself than those of its clients.

**3.** Bankers Trust earns a commission on the paper it places, and thus the $4 billion of commercial paper it has outstanding does not translate into an equivalent amount of income.

certain start-up costs, the mere existence of such expenses hardly justifies allowing the bank to engage in activities that this Court has concluded violate federal law. In addition, Bankers Trust's placement services have been the subject of legal challenge almost since their inception. The bank has forged ahead, however, despite the very real possibility that its activities might be barred under the Glass-Steagall Act, and has generated revenues over a seven-year period from placement services that have now been judged illegal. The bank attempts to portray itself as an innocent victim about to suffer irreparable injury, but it made a conscious choice to engage in business the legality of which was strongly questioned, and has profited for seven years as the Federal Reserve Board and the courts have sought to resolve that question. Bankers Trust cannot now argue that past illegal activities, albeit undertaken in good faith, somehow justify future violations of law.

In short, the bank has failed to demonstrate that the injury it will suffer if a stay is not granted, or if an injunction issues, is so great that this Court must permit it to undertake activities this Court has found to be illegal.

■ Finally, Bankers Trust argues that injunctions should not issue as a matter of course in every case where a court finds a violation of federal law, and that the application of traditional equitable principles in this case—namely, the balancing of hardships to the parties and the availability of legal remedies—militate against an injunction here. The bank is correct that a finding of a statutory violation does not lead automatically to the issuance of an injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803–04, 72 L.Ed.2d 91 (1982). It is also true, however, that in a number of cases courts have found it unnecessary to inquire into the traditional requirements for injunctive relief when statutory violations are involved. *See United States v. City of San Francisco*, 310 U.S. 16, 31, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940) (equitable doc-

trines do not deprive courts of power to enforce declared congressional policy); *National Wildlife Federation v. Andrus*, 440 F.Supp. 1245, 1256 (D.D.C.1977) (clear and substantial violation of statute lessens need to balance other equitable factors); *Community Nutrition Institute v. Butz*, 420 F.Supp. 751, 754 (D.D.C.1976) (where federal statute violated, court need not inquire into traditional requirements for equitable relief); *Sierra Club v. Coleman*, 405 F.Supp. 53, 54 (D.D.C.1975) (same). A review of the various cases makes clear that, where federal statutes are violated, the guiding principle for determining the propriety of equitable relief is whether an injunction is necessary to effectuate the congressional purpose behind the statute. Put another way, in such cases, the equities to be balanced are not simply those of the private litigants, but also the interests of the public as defined by Congress. Thus, in *Weinberger v. Romero-Barcelo*, the Supreme Court ruled that the Federal Water Pollution Control Act did not mandate an injunction against naval activities undertaken without compliance with certain permit requirements, since the district court had found that the activities in question did not pollute the waters. The purpose of the statute, the Court stated, was to maintain "[t]he integrity of the Nation's waters, ... not the permit process." 456 U.S. at 314, 102 S.Ct. at 1804. Similarly, in *Realty Income Trust v. Eckerd*, 564 F.2d 447 (D.C.Cir.1977), the Court of Appeals for this circuit refused to enjoin construction of certain buildings where the agency had failed to file an environmental impact statement (EIS) within the time periods prescribed by the National Environmental Protection Act. An injunction would serve no remedial purpose, the court concluded, since a final EIS had been submitted and evaluated before any construction had begun. 564 F.2d at 456–57. Conversely, in *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), the Supreme Court declined to balance the equities and hardships of an injunction issued against completion of the multi-million dollar Tellico Dam, where op-

eration of the dam would bring about the extinction of the Snail Darter fish, in violation of the Endangered Species Act. Effectuation of Congress' clear intent, the court found, required issuance of the injunction, regardless of the costs involved. *Id.* at 193–94, 98 S.Ct. at 2301. So also in *United States v. City of San Francisco,* the Court refused to weigh the hardships to the parties and affirmed a district court's injunction against the city's sales of electric power to a private utility. In granting San Francisco certain lands and rights-of-way in order to enable it to generate hydroelectric power, Congress had expressly prohibited the city from transferring the right to sell the power to a private corporation. "[E]quitable doctrines," the Court stated, "do not militate against the capacity of a court of equity ... to make a declared policy of Congress effective." *Id.,* 310 U.S. at 31, 60 S.Ct. at 757.

As discussed at length in the February 4 Opinion, the statute involved here, the Glass-Steagall Act, lays down a series of *flat* prohibitions designed to forestall a host of "subtle hazards" and to eliminate potential conflicts of interest that Congress believed might arise if commercial banks underwrite or otherwise promote the sale of securities. This Court has found that Bankers Trust's activities contravene those prohibitions and that precisely those promotional pressures that Congress sought to root out of the commercial banking industry inhere in its sales of commercial paper. This is not a case, therefore, where the violation at issue does not implicate the core concerns underlying the statute, or where alternative regulatory measures are available to protect the public interest. Here an injunction is essential "to make a declared policy of Congress effective." In other words, Congress has dictated the balance of equities by determining that the public interest requires a complete separation of commercial and investment banking. This Court need not look further.

Accordingly, for all the foregoing reasons, it is hereby

ORDERED that Bankers Trust Company be and it hereby is permanently enjoined from sales of third-party commercial paper in the manner described in the June 4, 1985 Statement issued by defendant Board of Governors of the Federal Reserve System.

IT IS FURTHER ORDERED that the effect of this Opinion and Order be and it hereby is stayed until March 1, 1986, in order to allow the bank a reasonable amount of time to discontinue its commercial paper placement services in an orderly fashion and to apply to the Court of Appeals for a stay of the injunction and the February 4, 1986 Opinion pending appeal.

IT IS FURTHER ORDERED that plaintiff Securities Industry Association shall post with the Clerk of the Court a bond of one hundred thousand dollars ($100,000), in cash or surety, within 48 hours of issuance of this injunction, failing which the injunction shall stand immediately dissolved.

IT IS FURTHER ORDERED that Bankers Trust Company shall post with the Clerk of the Court a bond of one hundred thousand dollars ($100,000), in cash or surety, within 48 hours of issuance of this Order, failing which the stay shall stand immediately dissolved.

It is, this 18th day of February, 1986 at 3:40 p.m.

SO ORDERED.