KEARSE, Circuit Judge:
Defendant Jonnet Development Corporation (“Jonnet”) appeals from a judgment of the United States District Court for the Eastern District of New York, Jacob Mish-ler, Judge, which, adopting certain proposed findings of fact and conclusions of law submitted by the United States Bankruptcy Court for the Eastern District of New York, C. Albert Párente, Bankruptcy Judge, principally (1) held that Jonnet as lessor of certain premises had violated a judgment of the bankruptcy court (a) allowing Lafayette Radio Electronics Corp. (“Lafayette”) — predecessor in interest of plaintiff Wards Company, Inc. (“Wards”) — to assume as lessee a lease on the premises, and (b) ordering Jonnet to make certain repairs to the premises; (2) declared terminated the lease and a sublease entered into by Wards; and (3) awarded damages to Wards in the amount of the profits it would have earned on the sublease had Jonnet obeyed the bankruptcy court’s judgment. On appeal, Jonnet contends chiefly that the district and bankruptcy courts lacked subject matter jurisdiction, that venue was improper, and that Jonnet was improperly denied a jury trial. Finding no merit in any of Jonnet’s contentions, we affirm.
I. Background
A. The Lease and Lafayette’s Bankruptcy
The matter arises out of a 1967 long-term lease (the “Lease”) of a retail store owned by Jonnet and the subsequent treatment of the Lease in the lessee’s chapter 11 bankruptcy . proceeding. On March 21, 1967, Lafayette Radio Electronics Corporation of Monroeville, Pennsylvania (“Mon-roeville Lafayette”), a wholly-owned subsidiary of Lafayette, leased a retail store in Monroeville (the “Store”) from Jonnet Enterprises, Inc., corporate predecessor of Jonnet. The Lease was for a term of ten years and gave Monroeville Lafayette two options to renew for additional terms of five years each. Apparently, the first such renewal option was exercised in 1977.
On January 4, 1980, Lafayette and six of its subsidiaries, including Monroeville Lafayette, filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy. Code, 11 U.S.C. §§ 1101-1146 (1982), in the United States Bankruptcy Court for the Eastern District of New York. Pursuant to a plan of reorganization confirmed by the bankruptcy court in 1981, the six subsidiaries were merged into Lafayette, and Lafayette was then merged into Wards.
In the meantime, Lafayette had reached agreement for a 7-year sublease (the “Sublease”) of the Store to Roamon’s Stores of Pennsylvania, Inc. (“Roamon’s”), and in July 1980, Lafayette submitted an application to the bankruptcy court for (1) authorization to assume the Lease and enter the Sublease, and (2) an order directing Jonnet to make certain repairs to the Store. Jon-net opposed Lafayette’s application on the merits and on grounds of the bankruptcy court’s lack of jurisdiction and improper venue.
At about the time Lafayette filed its application, Jonnet took possession of the Store and changed the locks, thereby depriving Lafayette of possession. For these actions, the bankruptcy court held Jonnet in contempt for having “violated the automatic stay provisions of § 362(a) of the *86 Bankruptcy Code ... with full knowledge of the pendency of the ... chapter 11 proceedings,” and eventually fined Jonnet $2,500.
In early 1981, having rejected Jonnet’s jurisdictional and procedural contentions, the bankruptcy court held hearings on the merits of Lafayette’s July 1980 application for authorization to assume the Lease and enter the Sublease. In June 1981, the bankruptcy court granted Lafayette’s application, ruling that
(1) [Lafayette] has provided the adequate assurances necessary pursuant to § 365(b)(1) and (3) and is, therefore, permitted to assume the ... [L]ease; (2) [Jonnet’s] affirmative defenses are hereby dismissed, as [Jonnet] has failed to sustain its burden of proof with respect to said defenses; (3) [Jonnet] has a duty under the terms of the ... [L]ease to promptly repair the roof and all resulting damages to the leasehold premises; (4) the agreement between [Lafayette] and Roamans [sic ] is a sublease; and (5) the proposed sublease is in the best interests of the creditors and estate and is hereby approved. 12 B.R. 302, at 313.
A Judgment was entered (“1981 Judgment”) allowing Lafayette to assume the Lease and approving the Sublease, and ruling that Lafayette’s only defaults under the Lease were the nonpayment of rents totaling $9,375.03 and that Lafayette was authorized to cure those defaults by paying such rents within 30 days. In addition, and most pertinent for purposes of this appeal, the 1981 Judgment ordered Jonnet to make repairs to the Store:
8. [Jonnet] is hereby directed at its sole expense to forthwith undertake to:
(i) repair the roof of the leased premises so as to make it watertight;
(ii) repair the interior of the leased premises to remedy all water damage caused by the leaking roof; and
(iii) [Jonnet] shall make repairs of the water damage and roof as listed in (i) and (ii) hereof so as to satisfy the requirements of the Fire Marshal and/or the appropriate municipal authority for the issuance of occupancy permits for the leased premises.
9. [Jonnet] shall have until August 31, 1981 to complete the repairs, and in the event that said repairs are not completed and the occupancy permit not obtained by August 31, 1981, [Jonnet] shall be deemed to be in contempt of this Court and a proceeding shall be commenced to determine the amount of the fine to be levied against [Jonnet].
Jonnet’s appeal from the 1981 Judgment was discontinued by consent.
Apparently, Jonnet failed to make the repairs ordered by the 1981 Judgment. As a result, by letter dated September 3, 1981, Wards, into which Lafayette had by then been merged, notified Jonnet of this failure and withheld both the rent payments ruled overdue in the 1981 Judgment and the rent payments for subsequent months. On September 5, 1981, Jonnet once again took possession of the Store and changed the locks. In November 1981, Jonnet moved in the bankruptcy court for an order directing Wards to pay Jonnet the rent due under the Lease, including the $9,375.03 found overdue in the 1981 Judgment. This motion resulted in a preliminary direction to Wards to pay the rent into escrow and an eventual order (“1982 Order”) awarding $9,375.03 from the escrow account, plus interest, to Jonnet. Prior to this resolution of Jonnet’s motion, however, Wards had commenced the present action in the bankruptcy court.
B. The Proceedings Below
Ward’s complaint, filed in December 1981, alleged that Jonnet’s failure to make the repairs ordered by the bankruptcy court in the 1981 Judgment and Jonnet’s repeated efforts to deny Wards possession of the Store constituted defaults by Jonnet under the Lease. Further, Wards claimed that Jonnet’s actions had foreshortened the available term of occupancy under the Lease and Sublease and had therefore substantially diminished their value. Accordingly, Wards sought, inter alia, a declaration terminating both the Lease and the *87 Sublease, and damages in the amount of the present value of profits Wards would have received under the Sublease but for Jonnet’s defaults under the Lease.. In response, Jonnet principally (1) challenged the bankruptcy court’s jurisdiction over the subject matter of Ward’s action and challenged venue; (2) defended on the merits by denying that it had failed to make the ordered repairs and by asserting that Wards was in default under the Lease for failure to make rent payments; and (3) asserted a counterclaim against Wards for unpaid rent under the Lease and a cross-claim against Roamon’s for the same amount on the theory that Jonnet was a third-party beneficiary of the Sublease.
Following a five-day trial, the bankruptcy court made proposed findings that, inter alia, (1) Jonnet was in default under the Lease because of its failure to make the repairs directed by the 1981 Judgment, and this failure substantially diminished the value of the Lease and Sublease to Wards and Roamon’s; (2) Jonnet’s actions in changing the locks and denying Wards and Roamon’s access to the Store constituted a breach of the covenant of quiet enjoyment and, under applicable law, a wrongful eviction; and (3) Ward’s failure to pay its monthly rent did not constitute a default because Jonnet had failed to give the 15-day notice required by the Lease before a breach could become a default. Accordingly, the bankruptcy court recommended (a) that both the Lease and the Sublease be declared terminated, (b) that Wards be awarded damages equal to the profits it would have earned under the Sublease, and (c) that Wards recover both the funds turned over to Jonnet pursuant to the 1982 Order and the funds remaining in the escrow account.
Pursuant to Emergency Bankruptcy Rule I (the “Emergency Rule”) as adopted by the district judges of the Eastern District, In re Jurisdiction of Bankruptcy Courts (E.D.N.Y. Dec. 21, 1982), the bankruptcy court found that Wards’s action was a “related proceeding” within the meaning of Emergency Rule § (d)(3)(A), and it therefore entered no order or judgment but instead certified its proposed findings of fact and conclusions of law, along with a proposed order, to the district court for disposition, see id. § (d)(3)(B).
In the district court, Jonnet objected to the bankruptcy court’s proposed findings and conclusions on several grounds, including (1) that, under Article III of the Constitution and the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (“Marathon ”), neither the district court nor the bankruptcy court had subject-matter jurisdiction over Ward’s action; (2) that under Marathon, even if the district court had jurisdiction over the action, its reference of the action to the bankruptcy court pursuant to the Emergency Rule violated Article III; (3) that the bankruptcy court lacked subject-matter jurisdiction because there was not a sufficient nexus between the instant action and the underlying bankruptcy proceeding since that proceeding had been concluded and the debtor had ceased to exist prior to the institution of this action; (4) that venue was improper in the Eastern District of New York because the Store was located in Pennsylvania, Wards conducts significant business in Pennsylvania, Jonnet is a Pennsylvania corporation doing no business in New York, and Lafayette and Monroeville Lafayette had both been Pennsylvania corporations; (5) that Jonnet had been denied its statutory and constitutional right to a jury trial; (6) that the bankruptcy court had erroneously permitted one Robert Mitchell to testify as an expert and had improperly curtailed Jon-net’s cross-examination of Mitchell; and (7) that the bankruptcy court had “ignored” Jonnet’s “termination” of the Lease.
By a Memorandum of Decision and Order dated February 14, 1984 (“Decision”), the district court rejected each of Jonnet’s arguments and adopted the bankruptcy judge’s findings and conclusions. It rejected, on the basis of In re Kaiser, 722 F.2d 1574 (2d Cir.1983), Jonnet’s contentions that under Marathon the district court had no subject-matter jurisdiction over cases *88 arising in or related to bankruptcy cases and that in any event the reference of such cases to the bankruptcy court pursuant to the Emergency Rule violated Article III. It held that the case was within the bankruptcy court’s jurisdiction and that venue was proper because the suit was essentially an action seeking sanctions for violations of the bankruptcy court’s 1981 Judgment:
The complaint alleges damages resulting from Jonnet’s noncompliance with the 1981 order of the bankruptcy court. The entire record, including the testimony of the witnesses, relates to whether or not the parties violated the bankruptcy court’s orders and whether such violations constituted a breach of the lease. Although the case looks like an ordinary landlord-tenant action, it arises directly out of an order of the bankruptcy court. Therefore, the bankruptcy court may retain jurisdiction to determine compliance with its own order.
Decision at 10-11.
The district court rejected Jonnet’s jury trial claim on the grounds that Jonnet had waived any right to such a trial by failing to request one, and that, in any event, under the Emergency Rule the bankruptcy judge had no authority to conduct jury trials. It concluded that Jonnet’s claims concerning the testimony and cross-examination of Mitchell were unsupported by the record, finding, inter alia, that Mitchell had testified not as an expert but as a lay witness whose testimony was properly admitted under Fed.R.Evid. 701, and that the bankruptcy court had properly refused to admit certain photographs offered by Jon-net since they were extrinsic evidence offered merely for purposes of impeachment.
Finally, the district court found that the bankruptcy judge had not “ignored” Jon-net’s claim of “termination” of the Lease, but rather had found that Wards was not in default under the Lease because Jonnet had never given the notice of breach that would have given Jonnet the right to declare the Lease terminated.
The district court entered judgment granting Wards (1) damages against Jon-net for lost profits, (2) recovery of the rent and interest paid to Jonnet pursuant to the bankruptcy court’s 1982 Order, and (3) recovery of the balance remaining in the escrow account. This appeal followed.
II. Discussion
On appeal, Jonnet principally renews its several challenges to the jurisdiction of the bankruptcy and district courts to entertain the present action. In addition, it makes various claims of procedural error. We have considered all of Jonnet’s arguments and find merit in none of them. At least two of Jonnet’s contentions are foreclosed by recent decisions of this court,[1] and the *89 only contentions that require extended discussion are the arguments (1) that Marathon precludes the exercise by the bankruptcy court of jurisdiction over this action because the action does not arise in but is merely “related to” a bankruptcy proceeding, and (2) that the present action by Wards has an insufficient nexus to the Lafayette bankruptcy proceeding to support the district court’s bankruptcy jurisdiction.[2]
A. Bankruptcy Court Jurisdiction of “Related Matters”
Jonnet argues in effect that since this case is one “related to” rather than one “arising in” a bankruptcy proceeding, and thus is within the class of cases that the Supreme Court held in Marathon may not be adjudicated by bankruptcy courts, the bankruptcy court’s exercise of jurisdiction pursuant to Emergency Rule I was invalid. We reject this view because the authority granted to the bankruptcy judge pursuant to the Emergency Rule was sufficiently limited to avoid violation of Article III.[3]
In Marathon, the Supreme Court held constitutionally invalid Congress’s grant to the bankruptcy court of jurisdiction to make final determinations in matters, involving private rights, that could have been brought in a district court or a state court, i.e., matters merely “related to” proceedings in bankruptcy. Under the scheme adopted in the Bankruptcy Reform Act of 1978, bankruptcy courts were given the power in virtually all cases arising in or related to bankruptcy proceedings to conduct trials, make findings of fact and conclusions of law, enter final orders and judgments, and enforce such orders and judgments. The district courts and the courts of appeals were allowed only to conduct appellate review of the bankruptcy court determinations and were constrained in their review of factual determinations by the “clearly erroneous” standard. In light of the 1978 scheme’s conferral on the bankruptcy courts of substantial powers over cases “related to” bankruptcy proceedings, the Supreme Court concluded that the scheme “vest[ed] all ‘essential attributes’ of the judicial power of the United States in the ... bankruptcy court.” 458 U.S. at 84-85, 102 S.Ct. at 2878-2879. The Court held that such judicial power could not constitutionally be exercised by a court whose judges lacked the attributes of life tenure and salary protection mandated by Article III.
The approach of the Emergency Rule to bankruptcy court treatment of cases “related to” proceedings in bankruptcy is signifi *90 cantly different. First, under the Emergency Rule, cases are referred to the bankruptcy court by the district court, and the bankruptcy judges who are to exercise the powers conferred by that Rule have been appointed by the district courts rather than by the executive branch as was to be the case under the 1978 Act. Thus, the bankruptcy judges are currently subject to the control of Article III judges. Second, and to like effect, matters referred to the bankruptcy court pursuant to the Emergency Rule, including those “related to” bankruptcy proceedings “may be withdrawn by the district court at any time on its own motion or on timely motion by a party.” Emergency Rule § (c)(2). Third, bankruptcy courts may not conduct jury trials, and a matter in which a party has a right to jury trial and has not waived that right must be transferred to the district court for trial. Id. § (d)(1)(D). Fourth, in cases “related to” proceedings in bankruptcy, “the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceedings consent to entry of the judgment or order by the bankruptcy judge.” Id. § (d)(3)(B). Fifth, proposed orders and judgments issued by the bankruptcy court in related proceedings must be reviewed by the district court “whether or not any notice of appeal or application for leave to appeal has been filed.” Id. § (e)(2)(A)(iii). Finally, in conducting such review, “the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge.”[4] Id. § (e)(2)(B).
These factors persuade us that under the Emergency Rule the bankruptcy courts do not possess the essential attributes of federal judicial power. The bankruptcy judges are answerable to the district court; the cases referred to the bankruptcy judges may be withdrawn by the district court at any time; the bankruptcy judges have no power to conduct jury trials; in “related” cases, they have no power to make any final decision; the district court is completely free, on motion or sua sponte, to conduct new hearings and to give the bankruptcy judge’s proposed findings and conclusions as much or as little weight as it deems appropriate. The ultimate power of adjudication thus remains with the Article III judge of the district court, and we conclude that the scheme adopted by the Emergency Rule does not violate Article III.
This conclusion finds support in the ruling of the Supreme Court in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), upholding the delegation of similarly limited functions to United States Magistrates pursuant to the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B) (1982). In Raddatz, a magistrate was designated by the district court to conduct a hearing on a suppression motion in a criminal case; under § 636(b)(1) the magistrate *91 was not authorized to enter a final order or judgment but could only issue proposed findings of fact and recommended dispositions. The district court was then to make a “de novo determination” of those portions of the proposed findings or recommendations to which objection had been made by either the defendant or the government and only then issue a ruling. The Court observed that under this scheme
the district court has plenary discretion whether to authorize a magistrate to hold an evidentiary hearing and ... the magistrate acts subsidiary to and only in aid of the district court. Thereafter, the entire process takes place under the district court’s total control and jurisdiction.
447 U.S. at 681, 100 S.Ct. at 2415. The Court noted that “ ‘[t]he authority — and the responsibility — to make an informed, final determination ... remains with the [district] judge,’ ” id. at 682, 100 S.Ct. at 2415 (quoting Mathews v. Weber, 423 U.S. 261, 271, 96 S.Ct. 549, 554, 46 L.Ed.2d 483 (1976)), and held that “although the [Federal Magistrates Act] permits the district court to give to the magistrate’s proposed findings of fact and recommendations ‘such weight as [their] merit commands and the sound discretion of the judge warrants,’ ... that delegation does not violate Art. Ill so long as the ultimate decision is made by the district court,” id. at 683, 100 S.Ct. at 2416 (quoting Mathews v. Weber, 423 U.S. at 275, 96 S.Ct. at 556). This approval of the scheme of referrals to magistrates applies with equal force to the similar methods implemented by the Emergency Rule.
In sum, although the Marathon Court found unconstitutional the bankruptcy courts’ final adjudication of matters “related to” bankruptcy, it did not purport to invalidate all lesser forms of participation by those courts in the process of adjudication by Article III courts. We conclude that the Emergency Rule’s grant to the bankruptcy court of such limited powers in cases “related to” bankruptcy proceedings leaves with the district court the ultimate power of adjudication and hence does not violate Article III. Accord White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 263 (6th Cir.1983).
B. The Alleged Lack of Nexus Between this Case and Lafayette’s Bankruptcy Proceeding
Characterizing the present case as simply a suit for damages for breach of the Lease between itself as lessor and Wards as lessee, Jonnet also contends that there is an insufficient jurisdictional “nexus” between Wards’s suit and Lafayette’s bankruptcy proceeding. It argues that since (a) the debtor, Lafayette, is not a party to the action, and indeed did not even exist at the time the action was brought, and (b) the Lease is no longer part of the bankruptcy estate, the case has an insufficient connection to Lafayette’s bankruptcy proceeding to support jurisdiction. We reject the characterization of the action by Jonnet and hence the conclusion it would have us draw.
We agree with the district court that Wards’s present action was one to enforce the 1981 Judgment rather than a run-of-the-mine breach of contract action.[5] It sought, inter alia, sanctions for Jonnet’s failure to obey the order of the bankruptcy court to make specified repairs; it sought damages for loss of profits from the Sublease which the bankruptcy court had expressly found to be “in the best interests of the creditors and estate,” and which had been expressly authorized by the 1981 *92 Judgment.[6] The suit to enforce the judgment thus had ample nexus with the Lafayette bankruptcy proceeding.
In the 1981 Judgment, the bankruptcy court sought to retain jurisdiction in order to enforce its order to Jonnet to make the repairs to the Store. In light of Marathon, however, it is plain that the bankruptcy court has no power in a “related action” such as this to issue dispositive orders enforcing its prior judgments. Nonetheless, the Supreme Court gave its Marathon ruling prospective application only, 458 U.S. at 88, 102 S.Ct. at 2880, thereby declining to invalidate decrees previously entered by bankruptcy courts, and sought to minimize impairment of the interim administration of the bankruptcy laws. The 1981 Judgment thus remains enforceable, though not by the bankruptcy court itself. In the circumstances, we conclude that, for purposes of present enforcement, the bankruptcy court’s 1981 Judgment should be deemed a decree of the district court sitting in bankruptcy.
Finally, we conclude that the district court had inherent ancillary jurisdiction to enforce the 1981 Judgment. “[CJourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity,” Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934), and it is established that a federal court sitting in equity that has jurisdiction to issue a decree necessarily has ancillary and supplemental jurisdiction to enter orders and judgments designed to effectuate that decree, see, e.g., Dugas v. American Surety Co., 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (1937); Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123 (1893). In Dugas, the Supreme Court held that a district court had jurisdiction to enjoin a state court from hearing a claim adjudicated in an earlier interpleader action in that district court, despite the lack of diversity, federal question, or other independent grounds for jurisdiction over the injunction action. In Root v. Woolworth, the Court held that a district court had jurisdiction to hear an action for ejectment in order to enforce its prior judgment in an action to quiet title, despite the absence of any independent jurisdictional basis for the ejectment action. In both cases the Court held that the district court’s jurisdiction was “ancillary” to its conceded jurisdiction in the earlier action. See also Hamilton v. Nakai, 453 F.2d 152 (9th Cir.1971) (district court has ancillary jurisdiction over petition for writ of assistance to enforce its earlier order declaring rights in land), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). Accordingly, since the suit by Wards sought enforcement of the 1981 Judgment, we conclude that the district court had ancillary jurisdiction to entertain the action.
The fact that Wards was not a party to the 1981 Judgment does not lead to a contrary conclusion. Lafayette, which secured the judgment, would have been entitled to sue for its enforcement. Wards, as the surviving corporation of the merger with Lafayette, stands in Lafayette’s shoes and is likewise entitled to seek enforcement of the judgment. See, e.g., Root v. Woolworth, 150 U.S. at 411, 14 S.Ct. at 138 (plaintiff who was assignee of party that had obtained district court judgment quieting title to land was entitled to invoke the court’s ancillary jurisdiction to hear action of ejectment).
*93 Nor, in our view, does the fact that the relief sought in the instant action is different from that granted in the 1981 Judgment preclude the exercise by the district court of ancillary jurisdiction over this case. Although in Dugas the Supreme Court stated that the district court’s ancillary jurisdiction over subsequent actions to effectuate its prior judgment in an inter-pleader action would not extend to a case in which “the relief [is] of a different kind or on a different principle,” 300 U.S. at 428, 57 S.Ct. at 521, this statement was not necessary to the holding of that case, and we would regard literal adherence to it as unsound in circumstances such as those before us.
Since ancillary jurisdiction is recognized as part of a court’s inherent power to prevent its judgments and orders from being ignored or avoided with impunity, it would make little sense to rule that a court’s injunction could be enforced only by entry of another injunctive order and to deny the court the power to punish the contemnor or to award redress for the violation of its injunction. Here, the entry of a noninjunc-tive order was necessary to the effectuation of the 1981 Judgment. Ward’s right to use or sublet the Store in 1981, when the remaining term of the Lease was six years, was considerably more valuable than the same right in 1984, when the remaining term was three years. The mere entry in 1984 of yet another injunctive order requiring Jonnet to repair the Store and turn over possession to Wards would allow Jon-net to profit by its refusal to obey the 1981 Judgment. By terminating the Lease and awarding damages, however, the court could give Wards the full value of the relief granted to it in the 1981 Judgment. Accordingly, we hold that it was within the district court’s ancillary jurisdiction to grant Wards a declaration of termination, damages, and recovery of its rental payments.
■ We have considered all of Jonnet’s remaining arguments and have found them to be without merit.
Conclusion
The judgment of the district court is affirmed.

. Jonnet’s claim that under Marathon the district court lacked jurisdiction to hear Wards’s action is foreclosed by our recent decisions in In re Kaiser, 722 F.2d 1574 (2d Cir.1983), and In re Pine Associates, 733 F.2d 208, 209-10 (2d Cir.1984). In Kaiser, which involved a case "arising in” a bankruptcy proceeding, we reviewed a contention similar to that advanced here by Jonnet and concluded that "the district courts retain broad original jurisdiction to entertain bankruptcy and related cases,” 722 F.2d at 1578, since “Marathon in no way involved the jurisdiction of the district courts,” id. at 1577. Accord In re Stewart, 741 F.2d 127, 129-30 (7th Cir.1984); Oklahoma Health Services Federal Credit Union v. Webb, 726 F.2d 624, 625 (10th Cir.1984); In re Hansen, 702 F.2d 728, 729 (8th Cir.) (per curiam), cert. denied, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983). In Pine Associates, we found that Marathon also left unaffected the jurisdiction of the district courts in cases "related to” proceedings in bankruptcy. Accord Mitchell Excavators, Inc. v. Mitchell, 734 F.2d 129, 132 n. 1 (2d Cir.1984); In re Adirondack Railway Corp., 726 F.2d 60, 63 (2d Cir. 1984); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 200 (3d Cir.), cert. denied, - U.S. -, 104 S.Ct. 349, 78 S.Ct. 315 (1983); White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 259-60 (6th Cir.1983). Thus, whether the present action is one “arising in” or one "related to” bankruptcy, the district court had jurisdiction. See also note 3 infra.
Jonnet’s contention that the reference of the action to a bankruptcy judge pursuant to the Emergency Rule constituted an unconstitutional delegation of power is also foreclosed by Kaiser, in which we considered and rejected such an argument. 722 F.2d at 1578-80; accord In re Stewart, 741 F.2d at 131-32; In re Colorado Energy Supply Co., 728 F.2d 1283, 1286-87 (10th Cir.1984); White Motor Corp. v. Citibank, N.A., 704 F.2d at 261; In re Hansen, 702 F.2d at 729.

. We reject Jonnet’s claim that it was improperly denied a jury trial, though we disagree with the district court’s suggestion that Jonnet was not entitled to a jury trial because the case had been referred to the bankruptcy court and that court was prohibited from conducting jury trials by Emergency Rule § (d)(1)(D). If Jonnet had had a statutory or constitutional right to a trial by jury, then it would have had a right to such a trial by a court having authority to conduct it; and, rather than have its case tried in the bankruptcy court without a jury, it would have had the right to have the reference to the bankruptcy court withdrawn and the case tried before a jury in the district court. See Emergency Rule § (d)(1). Nonetheless, we reject Jonnet’s claim here because the record does not disclose a timely demand for a jury trial. Hence, any right Jonnet might otherwise have had to such a trial was waived. See Interim Bankruptcy Rule 9001(c); In re Beck, 22 B.R. 778 (Bankr.N.D.Ohio 1982).
We reject Jonnet's claim that the bankruptcy court ignored its termination of the Lease and es claims of erroneous evidentiary rulings substantially for the reasons given in the district court's Decision.

. A reasonable argument could be made that the present action by Wards "arises in” Lafayette’s bankruptcy proceeding because it directly seeks to enforce an order of the bankruptcy court rendered as a part of that proceeding. If the action were one "arising in” bankruptcy, Jon-net’s Marathon -based attack on the bankruptcy court’s jurisdiction would be foreclosed by our decision in In re Kaiser in which we concluded that Marathon did not preclude bankruptcy court adjudication of such actions pursuant to the Emergency Rule. The present action was brought as an adversary proceeding to enforce private rights, and it could have been brought in a nonbankruptcy court, see Emergency Rule § (d)(3)(A). Thus, though the question is close, we conclude that the action is one “related to,” not one "arising in,” bankruptcy.

. For "related cases,” where orders and judgments may only be proposed, not entered, it is unclear whether or not the provision that no deference need be given to the bankruptcy court’s findings has been superseded by the new Fed.R.Bankr.P. 8013, promulgated by the Supreme Court effective August 1, 1983. Rule 8013 provides that
[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court’s judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.
The Emergency Rule provides that appeal may be taken not only from orders and judgments but from proposed orders and judgments as well. Emergency Rule § (e)(1). It is unclear whether the second sentence of Rule 8013 was intended to govern district court review of the latter group of appeals. The district court in this case concluded that the new Rule superseded the Emergency Rule’s standard and required use of the "clearly erroneous” standard. Whichever standard was applicable, we see no basis for disturbing the district court’s rulings in the present case since the court not only found that the bankruptcy court's proposed findings were not clearly erroneous but also found that they were supported by the evidence.

. This disposes of Jonnet’s contention that venue was improperly laid in the Eastern District of New York. As the 1981 Judgment was entered in that district, the claim for violation of the Judgment may be deemed to have arisen in that district. See Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 452, 52 S.Ct. 238, 240, 76 L.Ed. 389 (1932) (violation of injunction constitutes contempt of court which issued it and is actionable in that court); Stiller v. Hardman, 324 F.2d 626, 628 (2d Cir.1963) (same). Hence, venue was proper under 28 U.S.C. § 1391(b) (1982) (civil action wherein jurisdiction is not founded solely on diversity may be brought in district in which the claim arose).

. Accordingly, we consider our recent decision in In re Turner, 724 F.2d 338 (2d Cir.1983), inapplicable to this case. In Turner, we held that an action for conversion brought by a discharged debtor against one of her former creditors was not within the jurisdiction of the bankruptcy court because it neither arose in nor was related to the underlying bankruptcy since it lacked any "significant connection” to the bankruptcy case. Id. at 341; see also In re Shirley Duke Associates, 611 F.2d 15 (2d Cir.1979) (reaching similar result under Bankruptcy Act of 1898). Other courts have also held that cases without a sufficient nexus with a bankruptcy case are outside the bankruptcy court's jurisdiction. See, e.g., In re Systems Marketing Consolidated Ltd., 19 B.R. 519 (Bankr.N.D.Ill.1982); In re Universal Profile, Inc., 6 B.R. 190 (Bankr.N.D. Ga.1980). Yet, like Turner none of those cases involved an action to enforce an express order of the bankruptcy court.